J. C. BRYAN *v.* O. HUBBS.

A sheriff is bound to return every process which come to his hands, not void, with a statement of his action under it; and if he has not completely obeyed it, with a lawful reason for his omission.

The Act of Assembly, 1870-'71, chapter 42, by which executions issued on judgments in civil actions, are required to be tested as of the term next before the day on which they are issued, is merely directory, and its omission does not vitiate the process.

Until the entry on the judgment docket by the clerk, no appeal from a judgment rendered in term time is effectual, and such entry must be within ten days after the judgment is so rendered. Notice of such appeal may be given in a reasonable time afterwards.

The undertakings necessary to perfect an appeal may be given within a reasonable time after notice of the appeal has been given. And after such appeal has bsen perfected, it is the duty of the clerk to give notice thereof to the sheriff, in order that any excution which may have issued may be superseded.

Until the sheriff receives notice that the execution has been superseded, he is to obey it according to its tenor. On receiving such notice, it is his duty to stop proceeding, and to return the writ with a statement of his action under it, and the reason for his ceasing to act.

MOTION for judgment *nisi*, heard by *Clarke, J.,* at the Spring Term, 1873, of CRAVEN Superior Court.

Defendant was sheriff of Craven county, and received on the 4th day of March, 1873, an execution in favor of the plaintiff, against one William Foy, returnable to the Spring Term, 1873, of the Superior Court, which commenced on the 24th day of March, 1873.

This motion is for a judgment *nisi* against the sheriff, the defendant, Hubbs, for failing to make a " due return."

The return made on the execution is in the following words: " The within execution stayed by order of J. Edwin West, clerk of the Superior Court of Craven county," March 12th, 1873.

The defendant objected to the motion, upon the ground that the execution was void in two particulars: 1st. That it commanded land to be sold, whereas it had only twenty days to run. 2nd. That it was not tested of the term next before the day upon which it is issued, and in fact bore no test.

The stay was ordered by the clerk according to the papers filed, to-wit: His order staying the execution was based on the undertaking, a copy of which is sent up.

His Honor, being of opinion that the execution was void for want of a test, refused the motion for a judgment *nisi,* whereupon the plaintiff appealed.

*Battle & Son,* for appellant :

1. The execution here not void, because not tested of preceding term.

It conforms to rule 21, of this Court, adopted June Term, 1869, which was subsequent to Act of March, 1869, chapter 76, section 10, directing executions to be tested of preceding term, and the Acts of January, 1871, chap. 42, sec. 10, and

December, 1872, chap. 14, but extends the Act. This shows that the Court concedes that provision to be directory.

Certainly, process conforming to a rule of this Court cannot be void under such circumstances.

A sheriff, being a ministerial officer, cannot be bound to examine into the legality of writs, but must execute them according to the exigency. Watson on Sheriffs, 54; *Cody* v. *Quin*, 6 Ired. 191; 3 Bac. Abrid. 687.

What end is attained by testing executions of preceding term, under our new practice? Docketing judgments constitutes a lien on land, C. C. P. '254. No lien is required on personalty until levy; *cessatio ratione*, &c. Executions upon judgment of Justices, docketed in Superior Court, can be tested of no term, with any good reason; nor can such as issue upon judgments in special proceedings. Under the old practice, the priorities of executions depended upon the *teste ;* now, the *teste* has no effect except as showing on the face of the execution the time of docketing judgments, as constituting a lien on land of judgment debtor; and in *alias* executions it does not have that effect.

The clerk, having issued the execution, was *functus officio*. He has no power to stay or enjoin executions. Such power is in the Judge. *Hunt* v. *Snead*, 64 N. C. Rep. 176. *McAdoo* v. *Benbow*, 63 N. C. Rep. Const. N. C., art 4, sec. 17.

To prevent executions from issuing upon a judgment for money, an undertaking with *two sureties* must be given within ten days. C. C. P., sections 304, 309, 310. One surety is sufficient on bond for costs, Act 1871, amending C. C. P., sec. 303; but this does not stay execution for the debt.

Here appeal was taken in open Court with notice to plaintiff; second security did not sign the undertaking and justify until March 14th, after execution issued.

It was the duty of the sheriff to execute the process, it having gone into his hands twenty days before Court (return day). He might have levied upon and sold person-

alty, and if none, he could have levied upon real property. At any rate, he should have made *due return.* What is *due return,* as to substance and form, is a question of law. *Waugh* v. *Brittain,* 4 Jones 470.

Sheriff here returns execution stayed, March 12th, when second surety signed and justified only on the 14th.

*Haughton,* contra:

1. The execution should have been *tested* of the preceding term. Act of 1870–'71, chap. 42, sec. 7, page 94. Otherwise it is so far void as to excuse the sheriff. Arch. Plead. 258; Comyn's Dig. 2; 2 Lord Raymond 775; 1 Sellon's Practice 520.

2. Defendant gave good security for the debt; *ergo, fi. fa.* issued according to law.

See sec. 300, C. C. P. Execution shall not be suspended until the giving the undertaking, 302, 306 and 308. Whenever an appeal is perfected it stays all further proceedings in the Court below upon the judgment appealed from. 310. Exception to sufficiency of sureties must be within ten days after notice of appeal. 312. These provisions shall apply to appeals to Supreme Court, and also as to stay of execution. Rules of Practice of this Court. 63 N. C. Rep. 667. Rule 11 uses the words "sufficient surety," and in a "sufficient sum." This is either a construction of the C. C. P., on this subject or an alteration, as allowed by sec. 394, C. C. P.

The object of the law and the purpose of this Court is, that the appellee shall be properly secured ; that is all that he can ask, and all that the law requires. This statute is directory. *Bloom* v. *Benedick,* 1 Hill, 130; *People* v. *Cook,* 14 Barb. 290.

If the Act is performed, but not in the time, or in the *precise* mode indicated, it may still be sufficient, if that which is done accomplishes the substantial purpose of the

statute. Cooley 78, and note cited on same page. *Marsh* v. *Cohen*, 68 N. C. Rep. 286.

RODMAN, J. The defendant contends that the execution was void, and imposed no duty on him to make a return.

I. Because there was only twenty days, or less, from the issue to the return day.

*Answer.* A sheriff is bound to obey every process (not void) which comes to his hands, as far as he lawfully can. He is therefore bound to return every such process with a statement of his action under it, and if he has not completely obeyed it, with a lawful reason for his omission. It is true that in this case the defendant could not have sold the lands of the defendant, because an advertisement of thirty days was necessary. It is also true that he was not required to levy on the lands of defendant. Since the law gives to a docketed judgment a lien on all the real property of the defendant, a levy has no use. But he might have levied on the goods of the defendants, if he had any, which he should have returned, or he should have returned that he had none, or other lawful excuse for the omission. The fact that the execution was stayed on the eighth day after it was issued, (assuming that the stay was lawful, and would have excused inaction after that day,) will not of itself excuse an omission to execute the process by levying on the goods of the defendant prior to that day, unless the return shows some reason for the failure. The return therefore was not a due one, unless the execution was void for some other reason alleged.

II. It is contended that the execution was void for want of a clause saying that it was issued at the last term of the Superior Court, which clause is called a *teste*. It is conceded that this clause was not required by C. C. P. (1868), but it is contended that it was made indispensable by the Act of 1870-71, chap. 42, sec. 7. (See also Acts 1868-'69, chap 76,

sec. 11.) This says: "All executions issued on judgments in civil actions shall be tested as of the term next before the day on which they issued, and shall be returnable to term of the Court next after that from which they bear test, &c. Before C. C. P. (1868), this formality had an effect. The lien of the execution ran from the *teste.* But as the law stood in 1872, and as it now stands, if observed, it is absolutely without any reason, aim or effect; the lien on land being from the docketing of the judgment, and that on personalty from the levy. The will of the Legislature ought to be obeyed even in small and useless forms. But we cannot suppose that the Legislature intended to make such an idle form so indispensable a part of an execution, as without it, the writ should be void.

Besides, the enactment cannot in all cases be obeyed. If a judgment be taken at a regular term and execution immediately issue therefrom, it will be made returnable to the next regular term; but if a special term be called in the meanwhile, the execution would cease to be returnable to the next term. And if it should be known to a plaintiff that a special term will occur, and he issues his execution returnable to that, then the defendant will not have from one regular term to another, for the payment of the judgment, but possibly a very much shorter time; a result which is opposed to the whole spirit of the Act, and probably never occurred to the draughtsman. And so, as is said by the plaintiff's counsel, in an execution upon a justice's judgment docketed, a *teste* would be false and repugnant.

We think the Act in question in this respect is merely directory, and the omission of the form was only an irregularity which might have been amended at any time, and did not vitiate the execution.

III. We now come to the more important question; was the return insufficient, either in that the certificate of the clerk of 12th March, was not a lawful excuse for omitting

to proceed further upon the execution after its receipt or from any other defect?

This involves these questions:

1. Within what time must the undertakings to appeal be given?

2. Has the clerk power, upon the proper undertaking being given, to stay the further action of the sheriff upon an execution previously issued?

3. What is the sheriff's duty in such a case?

Some uncertainty seems to exist among the profession on the matters covered by these questions, and to answer them will require us to consider the whole subject of the practice on taking and perfecting appeals.

1st. C. C. P., sec. 300. An appeal must be taken within ten days after the rendition of a judgment in term time. Sec. 301. " Within the time prescribed in the preceding section, the appellant shall cause his appeal to be entered by the clerk on the judgment docket, *and notice thereof to be given to the adverse party.*" The rest of the section prescribes how the case is to be settled, and is not material. On this clause it is to be noted that the appeal is taken by causing it to be entered on the judgment docket. It is the clerk's duty to enter it, if requested, within the ten days. Until such entry, no appeal is taken; without that as a foundation all subsequent proceedings are irregular. No doubt, in *a proper case,* the record could be amended after the ten days, or at any time, to speak the truth. Nothing need be said on that subject. The more pertinent question however, is, whether notice of the appeal must be given within the ten days. It is clear that the appeal must be entered within the ten days. It is also clear that notice of the appeal must be given. *But must it be given within the ten days?* We think it need not be, and for this plain reason, that as the party has until the last minute of the time to take his appeal in, the notice of it, which must (unless where the mere entry

of the appeal is notice, as in practice in most cases it would be under sec. 80, C. C. P.,) take some time, and may possibly take more than ten days, may, from the necessity of the case, be given after that time. Where two things are required to be done in succession, and a certain time is allowed for doing the first, the second must be permitted to be done after that time. Consequently we think the notice of appeal (where not given merely by the entry, as it may be under sec. 80), may be given in a reasonable time afterwards.

What is a reasonable time, is to be determined by the purpose (which here is the settling the case), and the circumstances. In general, it may be said that any time will be reasonable, which allows ample time afterwards for the proceedings for settling the case, and for sending up the appeal in due time. It may be observed here that this construction is supported by the consideration that nothing is effected by merely giving notice of appeal. If the appellant does not proceed to have his case settled, his appeal and notice are vain; and so if he fails to give the undertakings required. There can be no reason therefore for requiring notice of appeal, or the submitting of a case, or the giving an undertaking for costs, all of which are necessary before the appeal can be sent up to be done in any fixed certain time. The reason of the thing would seem to be satisfied by requiring these things to be done in a reasonable time, so that the purpose may be accomplished without inconvenience or injury to any party. The successful party loses nothing by any delay, his excution is not suspended. Provided the appeal is perfected so that it may be heard in due time and course, every object is attained without inconvenience to any one. It may here be said too that when the appellant presents his case to the respondent under sec. 701, that is necessarily notice of the appeal, and there is no obligation to give it earlier, and no reason for doing so if the purpose

be only to send up the case.   Before the appeal is perfected even for the sending up of the case, an undertaking for costs, &c., must be given under sec. 303.   A copy of this, with the residences of the sureties, must be served as provided in sec. 80, and the appeal may then be sent up.   It would seem that where the amount to be secured was so small (rarely if ever exceeding $50) it might safely be left with the clerk to pass on the sufficiency of the surety.   But until the law shall be altered it should be followed.   We do not say that in all cases the giving of the residences is essential, but the service of a copy certainly is.

We now come to the proceedings having for their object to suspend execution.

The undertakings required by sections 304, 305, 306, 307, must be given and they cannot be considered as effectually given until notice is given as required by sections 309 and 310.   But the mode of giving notice is governed in this as in other cases by section 80.   No certain time is prescribed, at least, none is directly prescribed, within which these undertakings shall be given.   It is contended that it must be implied from sections 309 and 310, that these undertakings must be given within ten days after taking the appeal when that of itself is notice, or at least within ten days after any subsequent notice of the appeal whenever that may have been given, *because* the respondent is allowed ten days " after notice of the appeal," within which to object to the surety.   We think this is a misconstruction, because it would be very inconvenient and opposed to the general spirit of the Act, without any reason.   The spirit and reason of the act is, 1st, That the appellant may have his case reheard in the appellate Court in every case where it can be done without prejudice to the successful party, whose claim by the judgment in his favor, is *prima facie,* a rightful one ; 2d, That the successful and *prima facie* rightful party shall not be deprived of the security which his judgment and execu-

tion give him until other adequate security is substituted. What difference can it make in reason, and looking at these purposes, at what time the adequate security is substituted, provided it be done in a reasonable time, that is to say, within a time which answers every purpose of the Act, without inconvenience to any party. The construction contended for, by confining the power to perfect an appeal to ten days after judgment, would restore almost the inconvenience and absurdity of the old practice, by which a party was compelled to appeal during the term from a judgment which might happen not to be given until the last instant of the term. Moreover, where the object is to allow the respondent ten days within which to object to the sureties, the expression seems strange which directs the time to begin to run from notice of the imperfect and intended appeal, and not as one would naturally expect from notice of the *appeal perfected* by giving the required undertakings. The words, "notice of the appeal," are equivocal; they may mean notice of the intended appeal, or notice of the appeal perfected by the notice. We conceive this last to be the true meaning of section 310, and that the time allowed the respondent is ten days from notice of the perfected appeal, which is given by a copy of the undertaking with the residences of the sureties without which the undertaking is ineffectual. With this construction this section affords no reason for saying that the undertakings shall be given within any certain time. They may be given within a reasonable time, and what that is has been already stated. It is that which will give the respondent the full benefit of his judgment if it be affirmed, and no reason is now seen why it may not extend up to the giving of judgment in the appellate Court.

2. Then the question arises, if the clerk had issued excution before the perfecting of the appeal, what is his duty when the appeal is perfected?

The effect of it is, to stay all proceedings. Secs. 308, 311.

The only way in which the apellant can get the benefit of these sections is by giving notice of his perfected appeal to the clerk and sheriff. It is true that the clerk has notice that the undertaking has been given, but he *may* not have notice that notice of it has been given to the respondent, sec. 80. When he has notice of the perfected appeal (by the performance of both Acts), no reason can be seen why he should not give notice of the perfected appeal to the sheriff. There can be no propriety in applying to the Judge for an injunction. The case does not constitute one in which, by C. C. P., sec. 189, an injunction is allowed. The giving the undertaking and notice is, by the statute, a suspension of further proceeding. We think, therefore, it is the clerk's duty to give notice to the sheriff that the appeal has been perfected, by which execution is superseded.

3. *What is the sheriff's duty before and after receiving notice that appeal has been perfected so as to supersede execution?* His duty while the execution is in his hands is to obey it according to its tenor. On receiving official information that the execution has been superseded, it is equally his duty to stop proceedings (as required by sections 308, 311) and to return the writ with a statement of his action under it, and the reason for his ceasing to act.

To apply these views to the present case. The return of the sheriff is insufficient: 1. Because it does not show a levy on the goods of the defendant, or any excuse for the failure. 2. Because the certificate of the clerk does not state that the defendant, in the execution, had perfected an appeal, but only that he had taken an appeal and undertaking *approved* by the clerk.

The judgment below is reversed, and being interlocutory, the case is remanded to be proceeded in, &c.

The plaintiff will recover costs in this Court.

PER CURIAM.                              Judgment reversed.