JOSEPH DOBSON and others v. ROXANA SIMONTON and others.

*Corporations, judgments against, and assets of, how administered.*

1. Judgments against a corporation rendered upon process issued after it ceased to exist, are of no validity; and the same may be impeached by a party interested in the administration of its assets, which must be had under the provisions of chapter 26 of Battle's Revisal.

2. A *de facto* corporation is estopped to deny its existence as to those who deal with it, but this does not preclude proof of the subsequent cessation of its corporate functions.

(*Vouglahn* v. *DeRosset*, 81 N. C., 467: *Eliz. City* v. *Lindsey*, 6 Ired., 476; *R. R. Co.* v. *Thompson*, 7 Jones, 387; *Hervey* v. *Edmunds*, 68 N. C., 243; *Attorney General* v. *Simonton*, 78 N. C, 57; *Overman* v. *Grier*, 70 N. C., 693; *Wordsworth* v. *Davis*, 75 N. C., 159; *Graham* v. *Tate*, 77 N. C., 120; *Long* v. *Bank*, 85 N. C., 354, cited and approved.)

CIVIL ACTION heard on exceptions to a referee's report at Fall Term, 1881, of IREDELL Superior Court, before *Seymour, J.*

The plaintiffs appealed. See *Bank* v. *Simonton, ante,* 187.

*Messrs. Robbins & Long, Scott & Caldwell* and *D. M. Furches,* for plaintiff.

· *Mr. J. M. Clement, contra.*

SMITH, C. J. The referee in his report, to whose findings of fact there is no exception, those filed by the plaintiffs in the court below being withdrawn in the argument before us, states, as his conclusions drawn from the evidence, that no books for receiving subscriptions to the capital stock of the Bank of Statesville were opened, as directed in the charter, under the supervision of the persons therein named, on the day mentioned, or at any other time, and no money was ever paid, or agreed to be paid under the memorandum prepared by direction of R. F. Simonton, to which his and four other names are affixed purporting to subscribe himself for 180 shares, and the others for 5 shares each; that two of the latter names were entered under an agreement with him that neither was to pay any money, and the shares annexed to their names should be transferred to him, as was afterwards done; that no meeting of stockholders was held to elect directors, or for any other purpose, and no meeting of those whose names are published, as directors, was had to elect a president, and no action was taken by them under the second and third sections of the act; that R. F. Simonton, the testator, published the due organization of the bank and its readiness to enter upon a general banking business, giving the names of the president and directors, and his own, as cashier, and solicited patronage for it; that thereupon the said Simonton, purporting to act in his said office, commenced operations in the corporate name of the

bank and conducted the same under his own sole management, receiving deposits, and in other financial dealings, until his death on February 20th, 1876; that after his death, those who were the reputed directors assembled, and, to enable the bank to withdraw its balances in its northern correspondent banks, undertook to appoint C. A. Carlton, cashier in place of the deceased, and he conducted and carried on the business in like manner until the first day of June following, when the doors of the office of the bank were closed, and it ceased to do business.

When the case was before us at January term, 1878, upon the defendants' appeal from the interlocutory order, restraining them from prosecuting their separate actions to obtain priority of payment out of the effects and property of the corporation in the hands of its debtors, the court, RODMAN, J., delivering the opinion, use this language: "Assuming for the occasion only that the Bank of Statesville had a corporate existence, as to those who *bona fide* dealt with it, it is clear that it *has voluntarily dissolved.* Nobody claims to own its stock and all its supposed officers disclaim their offices. It is a clear case, therefore, for the appointment of a receiver to take charge of and preserve its effects, subject to the order of the court. 78 N. C., 63.

The receiver has been appointed and at this term, in an action against the executrix of R. F. Simonton, we have upheld his right to pursue and recover the assets of the bank and the indebtedness to it of the testator himself. *Bank v. Simonton, ante,* 187.

It appears from the referee's report, that the defendants, Hauser, J. L. Patterson, administrator, T. A. Patterson and R. R. Gwyn, instituted, one in March, and the others in May, 1877, their separate actions against the bank, and in two of them associating the executrix, as a co-defendant, in which judgments were entered and supplementary proceedings sued out. Many of the other creditors have also sued

and recovered judgments against the bank at different times during the year succeeding the cessation of the banking operations and the closing up of its business. These actions were all commenced by summons served on the last acting cashier, one of its reputed directors, and the executrix, one or more of them in each case, and judgments recovered upon this service of process.

The referee rules that the creditors, who have sued out and been restrained from prosecuting supplemental proceedings by injunction, are entitled to priority of payment, according to the several dates at which the process was sued out against persons indebted to the bank, out of these respective debts when recovered by the receiver, and that all creditors by docketed judgments, according to the date of docketing of each, have a preference out of the general fund to the extent of the value of any land on which they thereby become liens under the statute. The court affirms this ruling and the plaintiffs appeal.

While these are but declarations of the law as understood and do not become adjudications until the fund has been ascertained and its appropriation decreed among the creditors of the bank in the proper proportion, yet as the parties have treated the ruling as equivalent to, if not an actual adjudication, and it is desirable that the litigation growing out of the *de facto* operations of the corporation, which came into existence in utter disregard of the legal requirements of its charter, should be terminated, we proceed to determine the single inquiry as to the legal validity of the judgments and subsequent supplementary proceedings to enforce them, rendered on process which issued after the *de facto* existence of the corporation ceased and was served upon its former *de facto* officers.

The case to which we have already referred (this very case indeed upon similar facts then presented) established the dissolution of the bank, and the time when it

dissolved is now fixed without objection, at a period long anterior to the bringing of any of the suits. After June 1st, 1876, there was no such corporation as the Bank of States-ville, in fact or in law, and there could be no *de facto* offi-cers to bind it by their acts, or on whom legal process could be served. The plaintiff's argument and the authorities relied on to support it are conclusive that a defunct corpo-ration like a natural person who dies, cannot be brought into court by process served upon officers or agents who were such when it lived. All such agencies cease with its dissolution except as provided in chapter 26 of Battle's Re-visal, and its effects and property are then to be adminis-tered in accordance with those statutory provisions. The receiver is the administering officer, and the rights and pri-orities of creditors as existing at the time of dissolution can-not be displaced or disturbed by the active diligence of creditors exercised afterwards. In this particular, the same rule prevails as in the administration of the estates of de-ceased persons. *Von Glahn* v. *DeRossett,* 81 N. C., 467.

This seems inevitably to follow from the fact that while the vitality of a corporation, not existing *de jure,* is in-cident to and inseparable from its acting as a corporate body, so the total and permanent cessation of all corporate functions must be an extinction of its life and being, for all purposes outside of an adjustment of its affairs and the col-lection and appropriation of its estate under the agency of its representative, the appointee of the court.

The principle decided in the cases of *Elizabeth City Acad-emy* v. *Lindsey,* 6 Ired., 476, and *Railroad Co.* v. *Thompson,* 7 Jones, 387, that where a charter has been granted, those found in the exercise of the conferred corporate privileges are conclusively deemed to be in the rightful possession, and the sovereign alone can complain, is not repugnant to the proposition that where none such are exercising those functions, it is not to be considered as still subsisting, and its

obligations may be enforced by an action when there is no such officer on whom process can be served to bind it, and the corporation itself is no longer *such de facto.*

These cases, and the more recent case of the *Attorney General* v. *Simonton,* 78 N. C., 57, to the same effect, declare that the corporation, acting as such, without, as well as under, legal authority, did exist in law as to those who dealt with it, and that those who "held themselves out" as officers of the corporation, "as to those who dealt with it are estopped to deny its existence." But this does not conclude parties from showing a subsequent expiration of its corporate life upon competent and sufficient proof of the fact.

The remaining enquiry is whether the plaintiffs, not parties to the judgments, can be allowed to impeach them and show their nullity. We think there is no doubt of their right to do so.

In *Hervey* v. *Edmunds,* 68 N. C., 243, an outside creditor of the defendant's intestate was permitted to assail the integrity of the judgment, for the reason that he was interested in the administration of the assets and preventing the priority attempted to be given to the plaintiff, Hervey. Still more direct is the interest of the other creditors in this a creditor's suit, to intercept and frustrate the efforts of the defendant creditors, to secure a precedence in the order of payment, and thus diminish the fund brought into court, as to the distributive shares of the others. In this action every creditor is, at his election, an adversary contestant of the claims of all others, and all redress is open to him that would be to the debtor himself. *Overman* v. *Grier,* 70 N. C., 693; *Wordsworth* v. *Davis,* 75 N. C., 159; *Graham* v. *Tate,* 77 N. C., 120; *Long* v. *Bank,* 85 N. C., 354.

Without protracting the discussion and examining the other points made in the argument, we place our decision upon the ground that the Bank of Statesville having ceased to act after the 1st day of June, 1876, and all its supposed

32

officers having since abdicated their functions, the judgments recovered upon the processes so served as the referee finds, are nullities, and no priority has been thereby acquired by the creditors.

There is error in the ruling and the judgment is reversed and the cause remanded to be proceeded with according to law as declared in this opinion.

Error.                                        Reversed.