WILLIAM M. WALTON v. WM. F. McKESSON and N. W. WOODFIN, Adm'r of CHARLES McDOWELL, and WM. F. McKESSON, Adm'r of JAMES McKESSON.

*Appeal—Amendment—Jurisdiction —Dockets— Records— Parties— Vacating Judgments— Void and Irregular Judgments.*

1. As a general rule the Supreme Court, in the exercise of its appellate functions, cannot acquire jurisdiction of a cause and the parties thereto until a proper transcript has been brought up and duly docketed therein.

2. While it may be the Supreme Court has power to direct or allow amendments to the record below of a cause while an appeal is pending, it is clear that it has no such power after a final judgment therein has been rendered.

3. The purpose of the Civil Issue Docket is to have there stated the issues joined between the parties to an action, and only such notes and memoranda as are pertinent to such issues and their preparation for trial should be entered thereon.

4. The Minute Docket is intended to and should contain a record of all the proceedings of the Court, and such other entries as the Judge may direct to be therein made.

5. While in the absence of entries on the Minute Docket those made on the Civil Issue Docket should not be disregarded, yet where there is a conflict between them, nothing else appearing, those on the former must prevail.

6. Under the practice-prevailing before the adoption of the present procedure in relation to appeals, the trial Judge, without the intervention of the parties to the action, made up and stated the case on appeal, and when filed and transmitted to the Supreme Court it was treated as a part of the record; and where the record proper and the case on appeal—though the latter was not certified as a part of the record—were in conflict in respect to a statement of the fact, the case on appeal was allowed to prevail, the records of the Supreme Court containing some evidence that that Court had proceeded in its decision upon the statements therein made.

7. A case on appeal stated by the parties and intended as a substitute for that prepared by the Court, found among the files of a case disposed of at former term of this Court, will not be recognized in the absence of affirmative proof that it was adopted by the Court.

8. The Court will not allow amendments to be made in its records—particularly after the long lapse of time—unless the proofs offered in support thereof are strong and convincing.

9. While any person having an interest in the subject may attack collaterally a judgment which is void, or may move to strike it from the records as a nullity, yet the general rule is that, *only parties to the action* will be heard to assail a judgment or record for *irregularity.**

This is a MOTION made in this Court by Richmond Pearson, the executor of Richmond M. Pearson, to vacate a judgment therein rendered in this case at January Term, 1870.

The action in which this motion is made, was begun by William M. Walton in the Superior Court of the county of Burke, on the 15th day of March, 1866, against W. F. McKesson, N. W. Woodfin, administrator *cum testamento annexo* of Charles McDowell, and W. F. McKesson, administrator of James McKesson, to recover the money due upon the single bond of W. F. McKesson, principal therein, and Charles McDowell and James McKesson, sureties thereto, in favor of the plaintiff, for the sum of $2,200, dated the 25th day of November, 1855, and due one day from date.

_____

*The Chief Justice having been counsel in the cause did not sit upon the hearing of this motion.

At the return term of the writ, the case was duly docketed in that Court, and continued from term to term until the Spring Term thereof of 1869, when the following entries therein appear, *made with pencil:*

"Fully administered for W. F. McKesson, administrator of James McKesson; same plea for the administrator of Charles McDowell." "Payment and set-off"—"open; continued on affidavit of defendant."

At the October Term of 1869, an entry in the case appears on the *civil issue docket* in the following words:

"Debt." "Jury—verdict. See minutes. Judgment against defendant, and N. W. W., adm'r, and W. F. McK., adm'r, $4,039.92, interest on $2,200, from 2d Nov., 1869."

This entry was made with *a pencil.*

"From this judgment the defendant McKesson appeals to the Supreme Court of N. C."

This entry was made with *ink.*

"*Quando,* as to administrator; absolute, as to W. F. McK."

This entry was made with a pencil.

At the same term of the Court an entry in the case was made in writing on the *minute docket,* whereof the following is a copy:

"W. M. WALTON  
  v.           }  General issue—Payment and set-off.  
W. F. McKESSON *et als.*

The following good and lawful men, chosen, sworn and empanelled, to-wit: Reuben Houck" (and eleven others, naming them), "who find the bond declared on to be the act and deed of the defendant W. F. McKesson, and Charles McDowell, intestate of defendants N. W. Woodfin, and James McKesson, the intestate of W. F. McKesson. They further find that said bond, or no part thereof, has been paid or satisfied, and that there is no set-off to the same. And they further find that the defendants, N. W. Woodfin and W. F. McKesson,

have not fully administered upon the estates of their intestates, but have assets belonging to the same sufficient to satisfy the plaintiffs' demands. And they also find the value of the bond declared on to be ($4,039.92) four thousand and thirty-nine and 92-100 dollars, of which sum ($2,200) twenty-two hundred dollars is principal, to bear interest from the 2d day of November, 1869, until paid.

"Judgment of the Court, that the plaintiffs do recover of the defendants, W. F. McKesson, and from N. W. Woodfin, administrator of Charles McDowell, deceased, and from W. F. McKesson, administrator of James McKesson, deceased, the aforesaid sum of ($4,039.92) four thousand and thirty-nine and 92-100 dollars, with interest on ($2,200) twenty-two hundred dollars from the 2d day of November, 1869, until paid, and costs, to be taxed by the Clerk.

"Defendants appeal to the Supreme Court of North Carolina."

The presiding Judge thereupon stated the case for the Supreme Court. He entitled the case thus:

"Burke Superior Court, Fall Term, 1869—W. M. Walton v. W. F. McKesson *et als.*"

He then thereunder stated the case, the last paragraph thereof being as follows: "This evidence was also objected to and ruled out. For rejection of evidence in these instances, the *defendants* excepted. *They* move for a new trial, which was refused. *They* appeal to the Supreme Court."

The case stated by the Judge was filed—certainly appeared—with the transcript of the record of the appeal. In the Supreme Court the appeal was docketed by its title, thus: "W. M. Walton v. W. F. McKesson and others." "Folk" was marked on the docket as "counsel for the appellant;" "Furches, *contra.*"

The case stated by the Judge was not set forth in the transcript of the record of the appeal. In the Supreme Court the counsel for the parties agreed upon a case for that Court,

apparently intended as a *substitute* for that of the Judge. And the substitute is entitled thus: "W. M. Walton v. W. F. Mc-Kesson and N. W. Woodfin, administrator, W. F. McKesson, administrator." At the end of this case stated, it is said: "Judgment for plaintiff, and defendants appealed." The counsel named signed the same.

In the *transcript of the record of the appeal,* at the end of the judgment as therein set forth, it is said: "From which said judgment the defendant W. F. McKesson prays an appeal to the Supreme Court of North Carolina."

The appeal was argued by counsel for both parties, and determined at the January Term of 1870 of this Court. The judgment of the Superior Court was affirmed, and judgment entered here against all the defendants, and at the foot thereof this order was entered: "Let the plaintiff have execution for the costs of this Court, as well as for his said judgment, from this Court to be issued, and let the judgment here be certified to the said Superior Court to the intent that the execution for the costs in that Court may issue."

Justice RODMAN delivered the brief opinion of this Court in the appeal, and entitled the same thus: "W. M. Walton v. W. F. McKesson and others." In the course thereof, citing several authorities, he says they "are decisive against the defendant." Then citing another authority, he says: "In that case there was but one defendant, here there are several. What relief the defendant may find in *The Code,* it is not for us to say. Judgment below affirmed."

N. W. Woodfin died on the ____ day of _____, 1876, and thereafter John Gray Bynum became the administrator *de bonis non cum testamento annexo* of Charles McDowell.

The late Richmond M. Pearson became, and was, at the time of his death, surety to the bond of N. W. Woodfin as administrator of Charles McDowell. He died the ____ day

of _____, 1878, leaving a last will and testament, which was duly proven, and Richmond Pearson qualified as executor thereof.

The judgment in this action has not been paid, and the plaintiff sold and assigned the same on the 18th day of March, 1879, to Samuel McD. Tate and James W. Wilson, who afterwards brought their action in the Superior Court of the county named against the said Richmond Pearson, executor, &c., alleging, substantially, as their cause of action, that the said Woodfin, administrator, failed and neglected to pay the said judgment and the single bond on which the same is founded, and thereby committed, and was chargeable with, a breach of his bond as such administrator, &c., for an account of which the said Richmond Pearson, executor, is liable, &c., &c.

In aid of his defence in that action, Richmond Pearson, executor, moves in this action "to set aside the judgment rendered in the Supreme Court, as above set forth, so far as Woodfin is concerned, on the ground:

1. That the same was irregularly rendered and contrary to the course of the Court.

2. That the said judgment is void as to Woodfin and all the parties named therein as defendants, except W. F. McKesson, it appearing from the transcript sent from the Court below in said case that no appeal had been prayed from the judgment of said Court by Woodfin, as administrator of McDowell, or any other defendant, except W. F. McKesson, and that said Woodfin, as administrator, was not before the Court."

*Messrs. Thos. Ruffin, D. G. Fowle* and *F. A. Sondley,* in support of the motion.

*Messrs. D. Schenck, J. B. Batchelor* and *Jno. Devereux, Jr.,* contra.

101—28

MERRIMON, J. (after stating the case.) It is very true, as contended by the learned counsel who argued in support of the motion under consideration, that in this and like cases this Court gets jurisdiction of the subject matter and of the parties to the action through and by means of an appeal, or some appropriate proceeding or writ substituted therefor, and a party cannot be treated or affected as an *appellant* unless he appeals as allowed by law. The appeal is essential to the jurisdiction, and this is not complete for all purposes, though it is for some, until the transcript of the record of the appeal shall be brought into this Court, and the appeal docketed, according to the course and practice of the Court; and that a party to the action appealed must be made matter of record, and appear sufficiently from and by it. The Court ordinarily sees, and has knowledge of its jurisdiction in a particular case, only by and from what appears in the record. It is this, and what thus appears in it, that establishes the jurisdiction of this Court and puts it in efficient relation and connection with the Court below, as to the appeal and whatever may be subserved by it. *Murray* v. *Smith*, 1 Hawks, 41; *Bledsoe* v. *Nixon*, 69 N. C., 81; *Bryan* v. *Hubbs*, 69 N. C., 423; *Moore* v. *Vanderburg*, 90 N. C., 10; *Spence & Ross* v. *Tapscott*, 92 N. C., 576; *Mfg. Co.* v. *Simmons*, 97 N. C., 89.

Now it is contended in effect, *first*, that the defendant Woodfin, administrator, did not appeal, nor does it so appear in the record, and, therefore, the judgment complained of is void; and *secondly*, that if apparently from the record he appealed, he did not do so in fact, and, therefore, the judgment as to him is irregular and ought to be set aside. We, on the contrary, are of opinion that all the defendants, including Woodfin, administrator, appealed, and that they did, sufficiently appears of record in the Court below, and as well in this Court.

It is questionable whether it is within the scope of our present inquiry to ascertain and determine what the defend-

ant did or did not do in respect to the appeal in this case, not made a matter of record, and what amendments of the record in the Superior Court might, or ought, in apt time, to have been made in respect thereto, because we have no authority now to alter or amend the record of that Court as made. It may be that this Court had authority to allow proper amendments in the case to meet the ends of justice, before the final judgment was entered, but the statutes conferring such power do not authorize such amendment to be made *after* final judgment. (Rev. Code, ch. 33, §17.; *The Code*, §965.) But we need not decide that we have, or have not, such authority, as in any view, our opinion is adverse to the motion.

It is true that at the trial term in the Superior Court, *memoranda* were made on the *civil issue docket* as to the verdict and judgment, and it is there written: "From this judgment the defendant McKesson appeals to the Supreme Court of North Carolina." But these *memoranda* ought not to have been made on that docket. Its purpose is to set down the issues of fact joined upon the pleading, and all other matters for hearing before the Judge at a regular term of the Court. Only notes and *memoranda*, as to the condition and preparation of these things, can find an appropriate place on that docket. Entries like those mentioned above should properly and regularly be made on the *minute docket*, the purpose of which is to record "all proceedings had in the Court during the term in the order in which they occurred, and such other entries as the Judge may direct to be made therein." (*The Code*, §83; Par. 3, 6.) But the *memoranda* made above mentioned were not intended to be, or regarded as, the record or a minute from which it might be drawn out, because therein, after the words "Jury—verdict," are found the other words, "See minutes"—that is, see the *minute docket*, the proper docket as to the entry of the judgment, &c. In

the absence of entries in the proper docket, such *memoranda* might be important—sometimes controlling, but not otherwise.

Moreover, it does not appear who made the entries in pencil, or that they were made by authority. It does appear that the entry in writing was made by counsel.

It is also true that in the transcript of the record of the appeal, at the foot of the judgment therein set forth, this entry appears: " From which said judgment the defendant W. F. McKesson prays an appeal to the Supreme Court of North Carolina." Nothing appearing to the contrary, this entry might fairly imply that the other defendants did not appeal, and the Court no doubt would have so accepted its meaning.

But the case stated by the presiding Judge distinctly states that the *defendants* excepted ; that *they* moved for a new trial, and that *they* appealed to this Court. This is important here. This action was pending at the time the *Code of Civil Procedure* was enacted and became operative ; it was therefore to be conducted and tried—it appears that it was—under the procedure, laws and practice of the Court prevailing next before that time. (C. C. P., § 402; Bat. Rev., ch. 17, p. 241); *Walton* v. *McKesson*, 64 N. C., 154. Under that procedure and practice the presiding Judge *allowed* the appeal—it was not *taken* by a party as under the present procedure—and it was the duty of the Judge, in allowing an appeal, to know who appealed, and to state the case on appeal for this Court, which was treated as a bill of exceptions. The case thus stated, became a part of the record, and imported verity.

This Court took notice of, and was governed by it, in hearing appeals, certainly in so far as it was pertinent and not in conflict with other parts of the record proper. (Rev. Code, ch. 31, § 98); *State* v. *Reid*, 1 D. & B., 377 ; *State* v. *Ray*, 10 Ired., 29 ; *Ring* v. *King*, 4 Dev. & Bat., 164; *State Bank* v. *Hunter*, 1 Dev., 100. So, in this case, the Court learned from

the case stated by the Judge that all the defendants appealed; and thus, at least apparently, the Court had jurisdiction, and the judgment was not void—at most, it was only voidable.

It is insisted, however, that the case stated by the Judge was not certified as part of the transcript of the record, and therefore it was not part of it. But it was filed with and treated as part of it by the parties, and so recognized and acted upon by the Court. We say so because it appeared with the record, and it was orderly and proper that it should be part of it, and the Court so recognizing it, decided the questions of law raised by it. As it was so accepted and acted upon, no person can now be heard to say that it was not part of the record of the appeal before the Court.

A paper writing, purporting to be a case agreed upon for this Court in the appeal, and signed by the counsel for the appellants and appellees, and which may have been intended as a substitute for the case stated by the Judge, though it does not purport, on its face, to be so, is found among the papers of the appeal, but it does not appear from the record of this Court or otherwise that it was made such substitute, nor does it appear that the Court recognized it at all, nor does it appear that the case stated by the Judge was withdrawn or displaced. The very intelligent counsel who argued the appeal, whose affidavits have been taken and filed, testify that they cannot say that such paper was intended as such substitute, nor can they say that the Court recognized and acted upon it. In the absence of affirmative satisfactory proof that it was so received, it cannot be allowed to displace and render ineffectual the case stated by the Judge, found, when in the nature and course of the matter it ought to be, although coming there in a disorderly way by consent of parties. It must be so taken.

Passing now to the second branch of our inquiry, did the defendant, Woodfin, administrator, in fact appeal? We cannot hesitate to say that we are fully satisfied by a strong pre-

ponderance of the evidence before us that he did. It appears that the transcript of the record upon which the appeal was heard and determined, was not a complete and correct one in several respects. A second transcript of it laid before us sets forth the verdict of jury and the judgment thereupon, drawn out formally and in detail, and with much care, on the *Minute Docket* of the Court, where it ought to appear, and at the foot of the judgment, this entry distinctly appears in its orderly and proper place, under the procedure and practice applicable : " *Defendants* appeal to the Supreme Court of North Carolina." Seeing the discrepancy between the transcripts we have troubled ourselves to examine the *minute docket* itself, and find the true entry to be as last above recited. This harmonizes with the case stated by the presiding Judge for this Court, and with all the entries in respect to the appeal, except that on the *civil issue docket*, which was irregular and out of place. The strong presumption is that the entry thus made is correct, and this is strengthened in that the record immediately in connection with it is drawn out with unusual care and precision, and recognized and acted upon by the Judge in stating the case for this Court. The entry was not made hurriedly, but advisedly ; the counsel and the Court, it seems to us, must, at the time, have been advertent to what was thus done. The entry in the *civil issue docket*, made by one of the counsel of the appellants, was probably made hurriedly, while he thought for the moment of McKesson, the principal defendant and the active defender of the action. Two of the able and experienced counsel say that they cannot now state whether all the defendants appealed or not; a third one says: "I think, though I cannot be at all positive, that all the defendants appealed." The same counsel—certainly two of them—appeared in the case in this Court. The appeal, by its title on the docket, purported to be that of all the defendants; it so appeared to be in the case stated on appeal;

and also in the judgment of this Court, the names of the defendants are severally set out and judgment entered specifically as in the Superior Court.

The appearance of the counsel was general; they were able lawyers of much experience in this Court, and the appellant Woodfin himself was an able lawyer, of long experience in the practice in the Superior and Supreme Courts.

It is not at all probable, but very improbable, that such counsel would so appear and allow such entries in the Superior Court, and such a judgment in this Court, if the defendants, or any of them, had not appealed. Moreover, the testator of the defendant Woodfin, administrator, was only surety to the bond sued upon. It is not at all probable that he would allow the judgment in the Superior Court to stand and be effectual against him, while the principal in the bond sued upon appealed, for the purpose of making good a defence that might have relieved all the defendants from liability to the plaintiff. He had a strong motive, as administrator, to appeal, and it had been strange indeed if he had not done so. It is said that the judgment against Woodfin, administrator, in the Superior Court was, in fact, but a judgment *quando*. If this be so, nevertheless, he had a like motive to appeal. Besides, he survived five or six years after the judgment was entered in this Court against him. So far as appears, he never suggested, nor has his administrator, since his death, nor has the administrator *de bonis non of McDowell*, that he did not appeal in this action. How very strange this is if he did not; and it would be quite as strange if he and his counsel had not knowledge of the appeal on his part, and the judgment here at the time, and for some while after it was entered, although after the lapse of eighteen years, the counsel have no recollection about the matter. The fact that this motion was not made until after the lapse of eighteen years is important, and weighs much against it, though this alone would not be conclusive.

This Court will interfere, in a proper case, to disturb a record or a pertinent entry made thereon in the orderly course of procedure, like that now in question, only when the proof produced in support of important proposed amendments thereto is clear, strong and convincing; it would be dangerous, indeed, to act upon any other rule. The record is a serious, authoritative memorial, imputing absolute verity as to what the Court does in actions, proceedings and matters that properly come before it. It is presumed to be made upon solemn scrutiny, with care and deliberation. Its purpose is to preserve and perpetuate the highest and best evidence of the rights of parties settled and determined by the Court. It is of great moment and importance, and must not be disturbed for slight causes, or upon evidence that gives rise only to doubts and uncertainty.

The principal evidence produced in support of the motion before us is the entry on the *civil issue docket* as to the appeal to which we have already sufficiently adverted, and also the fact that at once, after the judgment was entered in the Superior Court, the plaintiff docketed his judgment in the county of Buncombe, where Woodfin, administrator, resided, with a view to create a lien on his property, &c. It is said, why did the plaintiff do this, if Woodfin, administrator, appealed?

This evidence is indirect, argumentative, and inconclusive, and not entitled to much weight. The Code of Civil Procedure had, at the time the judgment was entered, been in effect but a brief while, and there was considerable uncertainty and confusion in the practice of the law. It may be that the plaintiff was advised by counsel to so docket his judgment, as a cautionary measure, especially as the appellant did not give an undertaking to stay execution pending the appeal. This may or may not have been so, but that it might not unreasonably have been so, impairs the force of the argument founded upon such evidence. It is also in

evidence that, very soon after the entry of the judgment in the Superior Court, the plaintiff and another joined in a proceeding against the defendant Woodfin, administrator, and the devisees and heirs-at-law of his testator, to sell lands of his testator to make assets to pay debts, &c.; and in the petition it was alleged that the judgment in this action was *quando,* &c.

Perhaps this might be evidence as to the character of the judgment, but it does not go to prove that the administrator did not appeal—he might well have appealed, if the judgment was only *quando,* in order to avail himself of the defences other than those in respect to assets. What motive impelled the plaintiff to join in the proceedings mentioned, does not appear. It may be that he was ill-advised, but any question in such respect is not material here.

The question much discussed on the argument, as to whether the judgment against the defendant Woodfin, administrator, in the Superior Court, was an absolute one or a judgment *quando,* is not before us. It is not presented by the motion, and as to it we express no opinion. Indeed, as we have said above, if it were before us, we could not decide it or grant any amendment in this Court of the final judgment.

The plaintiff insisted on the argument that the executor of the will of Pearson, who was surety of the administration bond of the defendant Woodfin, administrator, cannot be heard to make the motion before us, and we are of this opinion. Woodfin, administrator, did not, in his life-time, complain of the alleged irregularity of the judgment of this Court against him, and he is presumed to have been satisfied with it; nor has his administrator—not the administrator *de bonis non* of McDowell—complained of it since his death. Pearson, the testator, was not a party to this action—he had no direct interest in it, and no such interest as entitled him to be or become a party to it, nor could he have directed the defence to it, nor could he have prevented Woodfin, admin-

istrator, from waiving irregularities in the course of the action, if he saw fit to waive them.   He had no present right in the action as to the plaintiff, nor had he any subsisting right in it as to the defendant Woodfin, administrator.   Any right or liability on his part was prospective and contingent.

In support of the motion, the learned counsel cited and relied upon *Hervey* v. *Edwards*, 68 N. C., 243, and *Dobson* v. *Simonton*, 86 N. C., 492.   In the former case the Court said that when it appeared from the record that the Court had no jurisdiction any person might ask the Court to strike the judgment—a mere nullity—from the record.   And in the latter case it appeared that the judgments in question were *void*, and the Court held that creditors having a direct interest in the matter in the particular litigation might attack the judgment on that account.   We think they have no just application here.

It is settled by many decisions that generally only a party in the action interested may complain of irregularity therein, if he be living at the time the judgment was given against him.   No doubt when there was collusion found to the prejudice of third parties they might find appropriate remedies. *Hinton* v. *Roach*, 95 N. C., 106 ; *Knott* v. *Taylor*, 99 N. C., 511, and numerous cases there cited.

We are therefore of opinion that the motion can in no aspect of it be allowed.

Motion denied.