THE MARSHALL FOUNDRY COMPANY v. S. E. KILLIAN.

*Corporations—Liability of Stockholders—Parol Evidence.*

1. One, who participates in the irregular or fraudulent organization or operation of a corporation, will not be permitted to shelter himself from responsibility to its creditors by showing the invalidity of the organization.  As to creditors and others dealing with them, the stockholders in such organization are a corporation *de facto*, and liable, at least, to the extent of the capital stock subscribed by them.

2. The capital stock—including unpaid subscriptions therefor—of a corporation constitute a trust fund, for the benefit of creditors of the corporation, and the creditors have a right to examine into the affairs of the corporation, to ascertain if the subscriptions of stock have been paid, and how.

3. Each subscriber for stock in a corporation thereby becomes liable for the amount of stock subscribed by him, and he can only be discharged by paying money or money's worth, in the manner provided by the charter and by-laws.

4. A subscriber cannot discharge his liability as against creditors, for his subscription, by substituting shares paid up by another subscriber.

5. Parol evidence will not be received to vary the terms of subscription, or to show a discharge from liability on the part of a stockholder, in any other way than that prescribed by the charter and by-laws.

CIVIL ACTION, originally commenced before a Justice of the Peace for CATAWBA County, to recover the sum of $200, alleged to be due by subscription to The Marshall Foundry Company, and carried, by appeal, to the Superior Court of said county, and tried before *Boykin, J.,* at January Term, 1888.

It was in evidence, that A. W. Marshall, W. R. Self and others, by articles of agreement under the statute, were incorporated before the Clerk on the 7th day of February, 1884, under the corporate name of the " Marshall Foundry Company."

It was admitted that J. F. Murrill had been duly appointed receiver, to take charge of the property of the company and collect debts due it, in a certain proceeding, instituted, among other purposes, to set aside a mortgage executed by the company to secure a debt due one Alexander, wherein fraud was alleged, &c.

The defendant became an incorporator on the 11th day of February, 1884, in the following manner: The above named W. R. Self, one of the original incorporators, had subscribed for twenty shares, of the value of one hundred dollars each, and had paid in cash for fourteen of them.

He had sold two of the shares to one Miller, who paid him cash therefor. Miller sold the two shares to the defendant Killian, who paid him the cash therefor. Upon the organization of the company, the defendant was elected its president, and issued certificates of stock to all the then subscribers, himself among the number, all of which were duly countersigned by the secretary and treasurer, in the manner prescribed by the rules and regulations. The certificate of two hundred dollars issued to himself, represented the two hundred dollars of the fourteen hundred dollars subscription of Self, and by him transferred to Miller, and by the latter to defendant, and is the debt sued on in this action.

No certificate had been issued, up to the date of the election of the defendant, president of the company. Prior to the issuing of the stock, the company was notified of his purchase by the defendant, and it was admitted that Self had paid the subscription price of fourteen shares, in which are included the two shares of defendant. It was in evidence, that the said company had duly accepted and ratified the defendant's purchase of stock, and had permitted him to become a member and enjoy the benefits thereof.

The defendant had agreed to subscribe two hundred dollars to the capital stock, when the company was established, and was permitted to substitute these two shares, represented

by said certificate, in lieu thereof, when organization was perfected.

It does not appear that defendant's subscription has been marked satisfied on the books, but it does appear that the certificate was issued, as aforesaid.

The plaintiff objected to the evidence, showing the manner in which the defendant sought to relieve himself of liability to the plaintiff, because oral evidence could not be introduced to contradict the articles of subscription, and the stock could only be paid for in cash to the company, and because it did not appear that the company had authorized such substitution of stock, and because such would be a fraud on the creditors. Overruled, and plaintiff excepted.

The subscription list and by-laws were put in evidence, and from the former, it appears that the defendant subscribed for two shares ($100 each), and from the latter, among other provisions, that the stock shall be paid for in cash, "unless such payment shall be otherwise provided for by special contract with the conpany ......................."

There is also a requirement, that "all transfers of stock shall be made upon the books of the company, duly attested by the secretary and treasurer."

The plaintiff proposed to prove that the company was now greatly indebted and was insolvent. Objected to by the defendant. Objection sustained, and exception by plaintiff.

The Court instructed the jury, that the plaintiff could not recover, if they believed the evidence. The plaintiff excepted. Verdict and judgment for defendant. Appeal by plaintiff.

*Mr. L. L. Witherspoon,* for the plaintiff.
No counsel for the defendant.

DAVIS, J., (after stating the case). This action was commenced before a Justice of the Peace, and the allegations of

fraud, or other grounds upon which the plaintiff Murrill was appointed receiver, do not distinctly appear, but it appears to have been done at the instance of a creditor, and we assume that it was done under the provision of § 668 of *The Code,* authorizing the appointment of receivers, for the causes there stated.

By the "articles of agreement" filed with the Clerk, under which, "letters declaring" the incorporation were issued, it is stated: "The capital stock of the incorporation shall be $10,000, divided into 100 shares of $100 each," but in fact, as appears from the subscription list, only 70 shares ($7,000) were subscribed, and in other respects the provisions of the statute seem not to have been complied with, in the formation of the corporation; but of this the defendant, who became the president of the company upon its organization under the charter, can take no advantage, for the company was organized, and by participating in the organization, and acting as its president, all objection to the validity of its constitution or organization was waived, and, as to him, the provisions of the charter and by-laws of the company were binding. Cook on the Law of Stock and Stockholders, § 181 and § 233.

When a number of persons associate themselves together for the purpose of carrying on any business, a partnership is constituted, by which each member becomes liable to any person who may give it credit, and the creditor has a right to be paid, if any one of the firm is able to pay; but when a corporation is formed under the authority of the State, the capital subscribed becomes the basis of credit, and the members of the company are not individually liable for its debts, except, and only to the extent, that the charter or letters of incorporation may make them so.

It is said in Cook on the Law of Stock and Stockholders, § 199, "The capital, or capital stock of a corporation, is the aggregate of the par value of all the shares into which the

capital is divided upon the incorporation; it is the fund or re-
source with which the corporation is enabled to act, and
transact its business, and upon the faith of which, persons
give credit to the corporation, and become corporate creditors.
The public, in dealing with a corporation, has the right to
assume that its actual capital, in money or money's worth, is
equal to the capital stock which it purports to have, unless
it has been impaired by business losses. The public has a
right also to assume that the capital stock has been or will
be fully paid up if it be necessary, in order to meet corporate
liabilities. Accordingly the American Courts go very far to
protect corporate creditors; and in this country it is a well
settled doctrine, that capital stock, and especially unpaid
subscriptions to the capital stock, constitute a trust fund, for
the benefit of the creditors of the corporation." He then
enumerates some of the methods by which stockholders seek
to avoid their liability to corporate creditors, one of which
is, "by a transfer of the stock," another is, by "a cancella-
tion or withdrawal from the contract," and another, by "a
release from the obligation to pay the full par value of the
stock."     .

It is said, that, for the protection of corporate creditors,
Courts will look with rigid scrutiny into every such transac-
tion. "The reason why the capital stock of a corporation is
deemed to embrace all the stock for which the members
have subscribed, whether paid in or not, is, that since the
members are not, in general, personally liable for the debts
of the corporation, this fund is the stake held out to the
public, upon the faith of which the company gains credit."
Thompson's Liability of Stockholders, § 11, and the authori-
ties cited in the note. So far as creditors are concerned, the
capital stock is regarded as a trust fund, pledged for the
payment of the debts of the corporation, and this is as true
of the unpaid shares subscribed as of those paid up. *Adler*
v. *Milwaukee Brick Co.*, 13 Wis., 60.     .

In *Sawyer* v. *Hoag*, 17 Wall., at page 620, Mr. Justice MIL-
LER says: " Though it be doctrine of modern date, we think
it now well established, that the capital stock of a corpora-
tion, especially its unpaid subscriptions, is a trust fund, for
the benefit of the general creditors of the corporation. And
when we consider the rapid development of corporations as
instrumentalities of the commercial and business world, in
the last few years, with the corresponding necessity of adapt-
ing legal principles to the new and varying exigencies of
this business, it is no solid objection to such a principle that
it is modern, for the occasion for it could not sooner have
arisen." It was there held, that creditors of a corporation
had a right to examine into the action of the corporation
and see how the subscriptions to the stock had been paid;
and citing *Burke* v. *Smith*, 16 Wall., 390, and *New Albany* v.
*Burke*, 11 Id., 96, he says: " The governing officers of a cor-
poration cannot, by agreement, or other transaction, with the
stockholders, release the latter from their obligation to pay, to
the prejudice of creditors, except by fair and honest dealing,
and for a valuable consideration." Such conduct is charac-
terized as a "fraud upon the public, who were expected to
deal with them."

Upon a review of the authorities, we take the overwhelm-
ing weight to be, that after stock is subscribed and the com-
pany is organized, each subscriber becomes liable for the
amount of stock subscribed by him, and he can only dis-
charge this liability by paying it in money or money's worth,
in the manner indicated by the subscription, and the char-
ter or by-laws of the company; and neither the officers of
the company nor the stockholders can release him from this
liability without the consent of every stockholder. Each sub-
scription, when made, becomes a conditional contract with
every other person who may subscribe, that the amount
subscribed shall, upon the formation of the company, be
paid in accordance with the terms of subscription, and when

the requisite stock is subscribed, and the company is duly organized, it becomes the offer or basis of credit to the public, or to all who may deal with it, and every subscriber participating in the organization, thereby makes his subscription absolute, and is bound to pay it, according to the terms of the charter and by-laws of the company, and he can discharge his liability in no other way.

As between the corporators themselves, it may be that certificates of stock, by the consent of all the members, may be issued as if paid up, without any actual payment in full, or even in part; but however this may be, no device or arrangement among the corporators themselves, not made known to the public, by which the stock subscribed, instead of being paid, as the safe foundation of the credit and confidence which the company invites the public to give it, can be permitted to avail against the claims of persons who may deal with, and trust, the company upon the faith of its capital stock and corporate liability. By incorporation a privilege is conferred, which exempts the individual members from all liability except that incurred by membership, and good faith to the public requires a strict compliance with all the obligations imposed by that membership.

It has been held in England, under what is known as the "Companies Act," which is in some respects like ours, that if a person signs the memorandum of association—that is, subscribes for stock—he is bound to take the shares from the company, and does not satisfy the obligations by taking them from some one else; and, in a proceeding to wind up a company, a subscriber will not be permitted, as against creditors, to discharge himself from liability to pay for the stock for which he has subscribed, by showing an understanding and agreement with the other subscribers, by which, instead of paying to the company for the stock subscribed by him, he should take a portion of the stock subscribed by another in

lieu of that subscribed by himself. Forbes and Judd's case, 5 Whan Appeal cases (L. R.), 207; Migattis' case, 4 Equity cases (L. R.), 238.

If this were not so, an association of individuals, availing themselves of the privilege conferred by the State, might, without paying a dollar, if by their subscriptions alone they could get credit, rig out this artificial being called a corporation, and embark it upon the sea of trade and speculation, and safely take the profits of the voyage, if it shall prove successful, and easily escape the result of wreck and misfortune, if such shall be its fate. This, the authorities, English and American, concur in saying the law will not allow. Cook on the Law of Stock, &c., chap. 11, § 208; Field on Corporations, § 403; Thompson's Liability of Stockholders, §§ 11, 105, 124 and 139; *Hager* v. *Cluelland*, 36 Maryland, 490; *Sagory* v. *Dubois*, 3 Sandford's Chan. Rep., 509; *Sawyer* v. *Hoag, supra;* Forbes and Judd's case, *supra;* Migattis' case, *supra,* and the many authorities cited in them.

If it be said, in the case before us, that the defendant Killian was permitted to substitute the stock purchased by him from Miller (who had purchased it from Self) for the stock subscribed for by himself, and that there were no creditors and no liability to any one when this was done, the answer is, that the substitution was not warranted by the terms of the subscription, or by the charter and by-laws, and the fact is made to appear, not from the books of the company, but by parol, and the defendant could not discharge his liability in this way. "The creditors of the company, and all who may be interested in its safety or solvency, may well ask that the fund upon which they rely (the capital stock subscribed) shall really exist, not on paper, but in money, and be held sacred to discharge corporate liabilities." *Wood* v. *Pearce,* 2 Dis. (Ohio), 411; An. & Ames on Corp., §§ 146 and 531.

Parol evidence cannot be received to vary the terms of the subscription, or to show a discharge in any way other than that required by the terms of subscription and the charter and by-laws. *Bank* v. *Littlejohn*, 1 Dev. & Bat., 563; *Railroad* v. *Leach*, 4 Jones, 340; Cook on Stock and Stockholders, §§ 137, *et seq.*

Ordinarily, persons who give credit to the corporation have no knowledge or concern as to how, or the manner in which, the subscriptions to the capital stock are paid, but they have a right to demand that the stock and the payments be not fictitious. Here is a company formed, with a chartered capital of $10,000, and, as the record shows, a number of persons, the defendant among them, organize and enter upon the business indicated in the charter, with only $7,000 subscribed, and of that, only the sum of $890 was actually paid in cash, and the balance in machinery, lumber, work, &c., or not at all. It does not appear what the real value of the property taken in payment of subscriptions was, and the company seems only to have had a fictitious existence, and it is not a matter for wonder that it should so soon be found in the hands of a receiver and charged with fraud; but this does not help the defendant, who participated in the organization. Cook on the Law of Stock, &c., §§ 185, 186, 200, 210, *et seq.;* Field on Corp., § 403; Thompson's Liability of Stockholders, §§ 12, 15, 124, 125, 126, *et seq.;* Morawetz's Private Corporations, § 589, *et seq.*

It may be, by the reason of the failure to subscribe and pay up the capital stock and by organizing or pretending to organize a company with a capital of $10,000, when, in fact, it was neither subscribed nor paid up, the stockholders, who participated in the spurious organization, became individually liable to persons who dealt with them upon the faith of the spurious organization, as was held in *Hauser* v. *Tate*, 85 N. C., 81; See also *Dobson* v. *Simonton*, 86 N. C., 492, and. Cook on Stock and Stockholders, §§ 233, *et seq.*

However this may be, the persons who subscribed to stock and participated in the organization, under the guise of the authority conferred by statute, constituted a corporation *de facto*, if not *de jure*, and, having held out inducements to the public to deal with and credit it upon the faith of its chartered capital, they are liable, at least to the extent of the capital stock subscribed by them, and they cannot evade that liability by any private or secret arrangement that may have been entered into among themselves, or by a "simulated payment" of the stock subscribed, and if not actually paid, it may be reached by a creditor of the corporation, should it become necessary. *Sawyer* v. *Hoag, supra; Wood* v. *Pearce, supra.*

It is said that the right of corporate creditors to object to certain transactions which may be binding between the corporators themselves "is an essentially American doctrine, based upon the principle first enunciated by Judge STORY, that the capital stock of a corporation is a trust fund, to be preserved for the benefit of corporate creditors;" and it has been held that creditors may have the manner, in which the subscriptions have been paid, inquired into, and if fictitious, or if they have been paid for in "overvalued or unreasonably overvalued property," the subscribers may be held accountable. Cook on the Law of Stock and Stockholders, §§ 42, 43, and authorities cited.

The defendant was a subscriber to the capital stock—an original certificate for two shares of the stock was issued to him, for which he paid nothing to the company. It will not do to say that the two shares of stock were paid for by Self, for he only paid his own subscription, and that, as the record shows, not in cash, as the terms of subscription required, but in property, rated, it may be, greatly above its value.

The defendant was president of the company, was cognizant of all that was done, issued the stock. Can it be said

that the capital stock was faithfully preserved, for the benefit of those who might become creditors of the corporation?

We think not, and his Honor erred in permitting parol evidence to vary, and virtually annul, the terms of subscription, and in the charge given.

There is error.