JAMES M. HEGGIE v. THE PEOPLE'S BUILDING AND LOAN ASSOCIATION.

*Corporations — Dissolution — Charters — Building and Loan Association—Shareholder —Judgment Creditors—Supplementary Proceedings—Fraud and Collusion—Limitations—The Code—Usury.*

1. A judgment, whether just or unjust, conscionable or unconscionable, if regularly taken in a Court of competent jurisdiction, may be enforced by execution or proceedings supplementary thereto, and the judgment cannot be attacked by any member of the defendant corporation, or its creditors, except for fraud or collusion.

2. The corporation represents the shareholders in defending actions involving their rights and obligations, and a judgment against it, in the absence of fraud, binds them.

3. The action of the plaintiff, a judgment creditor, is not barred in three years after the corporation has ceased to do its regular business.

4. *The Code*, § 667, relates to corporations whose charters shall expire by limititation, or be annulled by forfeiture, or otherwise.

5. The defendant corporation could not settle with its members by the application of assets to the retirement or redemption of the stock of the shareholders until it had first settled and discharged all its liabilities, and any agreement among the shareholders looking to such arrangement will be void as to creditors.

6. Where there is a valid judgment against the defendant corporation, from which no appeal was ever perfected, this Court will not consider whether the plaintiff is confined in his remedy to particular assets, such as certain equities in land held by it. The judgment affects all the assets until it is impeached for fraud or collusion.

7. Where the defence of usury was not set up by the defendant corporation to resist an action by the plaintiff, its creditor: *Held*, that the assignee, a shareholder, interested in the administration of the assets and in preventing an attempted priority given to the plaintiff, is estopped to impeach or to show such judgment was void on such ground.

8. The orders drawn in favor of the shareholders after the defendant had ceased to do its regular business as a corporation are not an equitable assignment, or equitable execution, or supplemental proceedings, to subject the stock so drawn upon to the payment of the debt thereby created, nor do such orders so drawn constitute the owner of them a *bona fide* creditor.

9. The right to buy in and cancel its own stock may sometimes be exercised by a corporation, but not in derogation of the rights of *bona fide* creditors.

10. The owner of orders for the payment of shares of stock in a corporation cannot be allowed to interplead in supplementary proceedings by a plaintiff judgment creditor who has obtained his judgment.

11. Discussion by DAVIS, J., of the relative rights of creditors and shareholders of a corporation.

This is an appeal from a judgment of *MacRae, J.,* sustaining a demurrer to an interplea filed by C. E. Cheatham, in certain proceedings supplementary to execution, rendered

at the July Term, 1890, of the Superior Court of GRANVILLE County.

The record is voluminous, but the following summary is sufficient for the purpose of this appeal:

At the February Term, 1889, of the Superior Court of Granville, the plaintiff recovered judgment against the defendant association for the sum of $2,091.54, with interest on $1,086 till paid, subject to a credit of $600. Execution was issued thereon, and duly returned unsatisfied.

The defendant has no known and visible property subject to execution, and no equitable interest in land within the lien of the judgment, but has and owns choses in action and things of value unaffected by any lien, and incapable of levy, which, it is alleged, ought to be applied to the payment of said judgment; particularly $350 in the hands of its treasurer, J. C. Cooper, and an equitable interest in a tract of 200 acres of land, set out in the affidavit, and it is alleged that the defendant and its officers unjustly refuse to apply said money and equitable interest in said land to the satisfaction of plaintiff's judgment, and he prays that an order may issue, requiring the defendant, through its officers named, to appear and answer, &c., and that the defendant and its officers, in the meanwhile, and until the further order of Court, be directed not to dispose of said fund and said interest in said land.

Upon this application on affidavit, January 3d, 1890, the Judge made an order enjoining the defendant, its agents and officers, &c., and ordering them to appear, &c , and answer concerning the property of the defendant association.

Thereafter, by an order made upon the application of Mrs. Catherine E. Cheatham, allowing her to interplead in the proceeding, she filed an interplea, alleging, in substance, that, though the plaintiff had recovered the judgment set out in his application, he was not, in law or in equity, entitled to recover said judgment, and that she had brought an

action in the Superior Court of Granville County against the plaintiff and defendant association, within a year after the rendition of said judgment, for the purpose, among others, of having said judgment set aside and cancelled, because, "if the proper defence had been set up to said J. M. Heggie's (plaintiff) claim, the same could not have been recovered;" that the judgment "is unconscionable and unjust, and if the same be collected," she will fail in the collection of her claim against the defendant association, which she alleges to be "just and honest."

There is no allegation of any fraud or collusion between the plaintiff and the defendant association, and we need not, for the reason presently to be given, notice the grounds, set out at great length in the record, upon which Mrs. Cheatham bases her application to have plaintiff's judgment set aside.

But she further says, by her interplea, that the defendant association has no property except that now sought to be subjected to the payment of the plaintiff's judgment; that it has long since ceased to do business under its charter—many of its members are insolvent, some dead, and some have removed to distant States, so that an assessment cannot be made upon their shares of stock to satisfy her claim, to the payment of which the money and property now sought to be subjected by the plaintiff had been specifically appropriated, assigned and set apart. In June, 1879, the President and Executive Committee of the defendant association drew two orders on their Treasurer, one in favor of L. A. Paschall, administrator, with the will annexed, of Dr. William R. Hicks, for $272.86, with interest at eight per cent. on $247.08 from December 20th, 1874, until paid, "being the amount payable to said intestate's estate on his six shares of stock in said association," and the other in favor of Catherine E. Hicks, administratrix of H. C. Hicks, deceased, for $424.17, with interest at eight per cent. until paid, "being

the balance payable to said intestate on his stock in said association." These orders are now owned by Mrs. Cheatham, who was Mrs. C. E. Hicks, widow and administratrix of H. C. Hicks, and succeeded to the shares of stock owned by him and by Dr. W. R. Hicks, and who "owned in her own right" certain shares of stock in said Association, and she alleges, in her affidavit, that, "at the time said orders were drawn, there were just sufficient assets and credits in the hands of the treasurer for the payment of the same in full; that the officers of said association now admit, and have all along admitted, the correctness and justice of said debts," and the "drawing and accepting the orders aforesaid was, and is, an equitable assignment of said funds in the hands of said officers of said association;" that the property now sought to be applied by the plaintiff to the payment of his judgment is a part of the assets originally in the hands of the said treasurer for the payment of said orders, upon which they were drawn, "and the same have ever since been treated by said association and its managing officers as the property" of the affiant, and ought to be paid to her, "and that plaintiff should be adjudged to have no right, title or interest therein, or any lien thereon by reason of his said judgment," &c. She further alleges that one C. C. Heggie, a son of the plaintiff, was a member of the defendant association, and, in 1873 and 1874, borrowed money of the defendant association, and executed mortgages on lands mentioned to secure the payment of the same, and his equity of redemption therein was sold in February, 1875, and bought by the plaintiff, and she believes the same was bid in by the plaintiff for said C. C. Heggie, and paid for with his money, and the money sought to be recovered by the plaintiff J. M. Heggie was charged by the defendant association against the said C. C. Heggie "as fines, forfeitures, penalties and interest upon certain shares of stock in said association held by said C. C. Heggie, and that said transactions were usurious, yet

they were in strict accordance with the charter and by-laws of said association, of which said C. C. Heggie was a member, entitled to all its privileges, and liable to all the penalties of usury that the association was liable for; and, as to said transactions, he and the said corporation were in *pari delicto*," and he is estopped, by reason of his participation in said unlawful dealings, to sue for usury, or set up the plea of usury.

Accompanying the interplea of Mrs. Cheatham, and as part thereof, is an affidavit of J. W. Hays, Esq., secretary of the defendant association, in which he sets forth in "full and voluminous" detail "all the facts relative to the orders drawn by the executive committee in favor of said Catherine E. Hicks (now Cheatham), Henry C. Hicks and W. R. Hicks." Mr. Hays "denies that the defendant association has unjustly refused to apply said funds * * * to the satisfaction of said judgment," and says that he considered said "property applicable to the orders drawn upon the treasurer" of the association in favor of Mrs. C. E. Hicks, H. C. Hicks and W. R. Hicks, and the "defendant association has not recognized the claim set up by the plaintiff to the same." He also says, in his full and exhaustive statement, among other things, that, in the administration of the affairs of said corporation, the said officers endeavored to observe, keep and maintain the laws, rules and regulations of said corporation, as set forth and prescribed in the said charter and by-laws, so long as they were permitted to do so under the general laws of the State of North Carolina; and, to the best of the knowledge, information and belief of this defendant, the business and affairs of said corporation were conducted and managed strictly in conformity with the said charter and by-laws of said corporation, as the same were understood and interpreted by the officers and managers thereof, and by all the members of said corporation, until after the publication of the decision of the Supreme Court of North Carolina

at the June Term, 1876, thereof, in the case of *Mills and wife* v. *The Salisbury Building and Loan Association*, reported in 75 N. C., 292, from which decision it was perceived that the methods upon which this and other similar building and loan associations in this State had been conducting their business were discountenanced and would not be sustained by the Courts, and, therefore, the officers and managers of "The People's Building and Loan Association of Oxford" took measures for closing its business and making settlements with its members as speedily as practicable, and in a manner that was considered just to all concerned. This method of settlement was to collect from those members whose stock had been redeemed, and who had thereby become debtors to the association, the amount of money which had been advanced to them, with eight per cent. interest thereon from the time of such advancements, and to pay to those whose stock had not been redeemed, and who, therefore, would be creditors, the amounts which had been paid in on their stock, with eight per cent. interest thereon from the time of such payments by them as aforesaid; and it was estimated that the assets of the association, including the profits which had been previously made, would enable the association to defray the expenses it had incurred and to make such settlement with its creditor members.

It is also stated "that a considerable amount had accumulated in the hands of the treasurer, for which there was no demand in the redemption of stock in the usual manner, and it was sought to use this surplus fund in extinguishing, as far as practicable, the claims upon the association of those whose stock remained unredeemed. This procedure was generally acceptable to the membership of the association, and much of the unredeemed stock was thus retired." But one member, Henry C. Hicks, now deceased, who was the former husband of Mrs. Cheatham, and to whose interest she succeeded, "declined to have his stock (which was unre-

deemed) retired in this way, but insisted that the association should continue to do business in the manner indicated by the charter and by-laws until it should run its course to the end."

There is a detailed account and estimate made by the Secretary of the defendant association on the 1st of January, 1880, showing that the aggregate amount payable to Mrs. Cheatham from the association on the stock owned by her and the estates of H. C. Hicks and William R. Hicks, to whose "interest or stock in said association" she had succeeded, was $1,059.04, with interest on $775.25 from January 1st, 1880, at eight per cent.

It also appears that the assets of the defendant association amounted to $1,090, which were set apart for settlement with Mrs. Cheatham, of which $828.82 has been collected, from which $500.18 has been paid to her, leaving a balance of $328 64 in the hands of the Treasurer, which, with such interest as the association may have in the land mentioned in the plaintiff's application, constitute the assets of the association, and sufficient to pay Mrs. Cheatham, allowing a margin of $31 on account of any loss, etc., and that there were no other or just claims against the association, except those payable to her.

It appears from the record that the defendant association filed exceptions to the report of the referee and to the judgment overruling the same, rendered at the January Term, 1889, and appealed to the Supreme Court, but the appeal was never perfected, nor was any further action taken in relation thereto by the defendant asssociation.

To this interplea of Mrs. Cheatham the plaintiff demurs, and assigns the following as grounds of demurrer:

"1. Because it appears from the said interpleader and the exhibits and pleadings and other evidence referred to in said interpleader, that the said Catherine E. Cheatham's intestate, Henry C. Hicks, was a stockholder in the defendant corpora-

tion, and, as such, was a party to the action of James M. Heggie against the said corporation, in which judgment was rendered by Judge John Gray Bynum at January Term, 1889, of this Court, in favor of the plaintiff and against the defendant corporation for the sum of $2,091.54, with interest on $1,086 from _____, until paid, subject to a credit of $600, paid April 20th, 1887, and, as such party, is bound and concluded by said judgment of this Court.

"2. Because it likewise appears that from said judgment an appeal was prayed and granted to the Supreme Court.

"3. Because it also appears that the motion of the said Catherine E. Cheatham, administratrix as aforesaid, was not made in said cause of James M. Heggie against said defendant association at all, as it should have been done, but was made in the supplemental proceedings filed by said James M. Heggie against said association, and that more than a year and a day after the rendition of said judgment was said motion in said proceeding made.

"4. Because it likewise fully appears from said interpleader and exhibits as aforesaid, that said Henry C. Hicks, intestate of said Catherine E. Cheatham, was a stockholder in said association, and that the debt which she seeks to recover by means of said interpleader was the balance due to said Henry C. Hicks as such stockholder by said association, on account of stock paid for by him and due to him out of the assets of said corporation at a final dissolution of the said corporation, and due and payable only after the creditors of said corporation were paid.

"5. Because it likewise appears from said interpleader and exhibits as aforesaid, and the said judgment of said J. M. Heggie against said corporation, referred to in said interpleader, that said J. M. Heggie was a creditor of said association, and, as such, entitled to the funds referred to in said pleadings before, and in preference to said Henry C. Hicks,

or his administratrix, who was such stockholder and member of said association."

The plaintiff further moves to dismiss the interplea of Catherine E. Cheatham, because it does not state facts sufficient to constitute a cause of action or demand. That she is a stockholder and member of the defendant corporation, alleges no fraud in the action of the said corporation in regard to said judgment, or that the same was permitted to be taken illegally or in violation of any right of said stockholder, or any equity which would permit her, as a stockholder, to attack the conduct and action of the corporation, and she cannot attack said judgment, but· is estopped thereby.

*Mr. R. W. Winston,* for plaintiff.
*Mr. T. T. Hicks* (by brief), for defendant.

DAVIS, J.—after stating the facts: Whatever may have been the nature of the plaintiff's claim, whether just or unjust, conscionable or unconscionable, his judgment, if regularly taken in a Court of competent jurisdiction, and in accordance with the course and practice of the Court, created a lien upon any property owned by the defendant corporation, and its payment may be enforced by· execution, or, if execution be returned unsatisfied, by proceedings supplementary to execution, as prescribed by section 488 *et seq.* of *The Code,* and the judgment cannot be attacked or impeached by any member of the defendant association, or its creditors, except for fraud or collusion.

The corporation represents the share-owners in˚ defending actions involving the rights and obligations of the corporation, and, in the absence of fraud or collusion, binds them, and individual stockholders cannot assert or defend the rights of the corporation. *Moore* v. *Mining Co.,* 104 N. C.,

534; Cook on Stock and Stockholders, § 678; *Foundry Company* v. *Killian*, 99 N. C., 501.

The plaintiff having obtained his judgment against the defendant association, the liability and rights of the corporation, and of its members in relation thereto, are settled.

But counsel for Mrs. Cheatham insist that the plaintiff's judgment is "irregular and void," because the action in which it was rendered was commenced in July, 1884, "more than three years after the dissolution of the corporation, and more than three years after it had ceased to do business under its charter, &c., * · * * and no receiver was ever appointed," and for this he cites *The Code*, § 667, *et seq.; VonGlahn* v. *DeRosset*, 81 N. C., 467, and *Dobson* v. *Simonton*, 86 N. C., 492. This is a misapprehension. It is admitted that the company had ceased to do business under its charter, and that, in 1876, as stated in the affidavit of Mr. Hays, "it took measures for closing its business, and making settlement with its members as speedily as practicable," and this, as appears from the affidavit, was by applying the accumulated assets in the hands of the treasurer to the payment of the stockholders, to redeem or retire their stock, which procedure was, as it not unnaturally would be, "generally acceptable to the membership of the association," but the corporation could not settle with its members by the application of its assets to the retirement or redemption of the stock of the shareholders, until it had first settled and discharged all of its liabilities. 'It is well settled, at least in this country, that the capital stock of the corporation is a trust fund, to be preserved for the benefit of corporate creditors, and no agreement or arrangement between a corporation and its stockholders, whereby the latter are to be released from indebtedness on their subscriptions, will be valid or of any force as against creditors. Waterman on the Law of Corporations, pages 126 *et seq.;* Cook on Stock and Stockholders, § 42; *Foundry Company* v. *Killian, supra*. A *fortiori*,

would any arrangement or agreement by which the assets of the corporation should be divided and distributed among the shareholders in payment for their stock, before its liabilities to creditors are settled, be void as to creditors?

*The Code*, § 667, relied upon by counsel, relates to corporations whose charters shall expire by limitation, or be annulled by forfeiture, or otherwise, and provides that such corporations shall be continued as bodies corporate for three years for the purposes mentioned in that and the following sections, and has no application to a case like the present, in which the charter granted in 1872 had not expired or been annulled, and it appears from the record that payments were made by the corporation to Mrs. Cheatham after 1876 and as late as February 7th, 1889. Besides, H. C. Hicks, as appears by Mr. Hays' affidavit, "declined to have his stock (which was unredeemed) retired, * * * but insisted that the association should continue to do business in the manner indicated by the charter and by-laws until it should run its course to the end," and it would be singular if he, or one succeeding to his stock, could be allowed, at a much later period, to avail himself of that section of *The Code*, not only to defeat the application of the assets of the defendant corporation to the payment and satisfaction of a judgment against, but to subject the assets to the payment, or (as the corporation considered it) the redemption or retirement of his stock, for which, as stated by Mrs. Cheatham in her complaint, he had not "paid in full the amount" of his subscription. What amount had been assessed and paid by the shareholders upon their stock does not appear, but the full amounts had not been paid.

It is further insisted for Mrs. Cheatham, that it appears from the account stated, and upon which judgment was rendered in favor of the plaintiff against the defendant association, that the defendant association had been more than paid, and there was no necessity for the sale of the land,

and the plaintiff's "remedy was against the land, to recover it," and not against the association. Whether the plaintiff might have had such a remedy against the land we need not consider, as there was a judgment in his favor, in a Court of competent jurisdiction, from which, though an appeal was taken, no appeal was ever prosecuted, and no member or creditor of the defendant association can attack or impeach it except for fraud or collusion, and there is not only no allegation of this, but the whole record precludes all suspicion of it.

It is further contended by counsel for Mrs. Cheatham, that C. C. Heggie having been a member of the defendant corporation was estopped, being *in pari delicto,* and could not allege usury against it, as was held in *Latham* v. *Building and Loan Association,* 77 N. C., 145; and the plaintiff assignee of his equity of redemption was also estopped, and this defence was not set up by the defendant association, and Mrs. Cheatham, "being interested in the administration of the assets, and in preventing the priority attempted to be given to the plaintiff," and "not being a party to plaintiff's action is not estopped to show the invalidity of his judgment," and that it is void. If invalid and void, as insisted by counsel, the authorities cited were not needed to show that it might be "set aside at any time." That is well settled. But, as we have seen, in the case before us the judgment was not void. It was regularly rendered by a Court of competent jurisdiction, both as to the parties and the subject-matter, and no fraud or collusion is alleged or shown.

In the case of *Dobson* v. *Simonton,* 86 N. C., 492, cited by counsel, the judgments impeached were nullities, having been rendered when there was no such corporation as the Bank of Statesville in existence, either in law or in fact. No such bank ever had a *de jure* existence, and its *de facto* existence ceased on the 1st of June, 1876, a receiver was

107—38

appointed, and judgments rendered on process which issued after the *de facto* existence of the corporation had ceased, and served upon its former *de facto* officers, were not valid, and might be impeached by any person interested in the administration of its assets. The case before us is, as we have seen, very different. Its charter had not expired or been annulled, and it was acting under the control of its regularly and legally constituted officers, with whom the appellant, herself a member of the association, was dealing as such, and who, so far from acting in concert or collusion with the plaintiff, resisted his claim, denied its validity and insisted "that there were no other or just claims against the association" except those of appellant.

Of course if anything has been realized upon the execution in the hands of the Sheriff, the defendant will be entitled to credit therefor.

It is further contended for appellant that the orders on which her action was commenced in November, 1889, are an equitable assignment of the funds on which they were drawn, and that her action "is an equitable execution or supplemental proceeding" to subject the same, which "appellant individually did receive in full payment of all her stock from the defendant John W. Hays, then acting for the defendant corporation, on August 20th, 1881, and she has not, in fact, since that day been a member of said corporation," which constituted her a *bona fide* creditor of the defendant corporation (which she insists was then defunct), with a lien upon its assets, she being a purchaser of said orders for value.

As we have seen, the orders were issued in payment for stock held by her and her intestates as stockholders "in said corporation," and not only the assets, but the capital stock as well, constituted a trust fund for the benefit of corporate creditors, and the corporation could not pay or assign to a stockholder, nor could a stockholder receive any of the

assets from the corporation for the retirement or redemption of his stock till after all the liabilities of the corporation have been discharged.

There is nothing in the record to show that the defendant corporation has ever been dissolved, or its corporate affairs settled in any way recognized by law, and the appellant's stock continued to be liable for the corporate debts, and she and other stockholders were, and could only be, entitled by virtue of their stock, to share in the surplus after discharging all the liabilities of the corporation to its creditors.

It is further insisted by counsel for appellant that "the corporation had the right to buy, or to buy in and cancel its own stock, and to issue orders on its treasurer in payment therefor;" and for this position he cites a number of authorities, but upon examination it will be found that the authorities are not uniform, and, as is said in the note to sections 310 and 311 of Cook on Stock, &c., cited by counsel, quoting *Cappin* v. *Grunbus*, 38 O. St., 270, "we think the decided weight of authority, both in England and the United States, is against the existence of the power, unless conferred by express or clear implication," and the author, in the text, says: "If the sale is completed and the corporation afterwards becomes insolvent, the shareholder who sold the stock to the corporation is liable on the winding up, as though he never had made such sale." *Cook, supra*, and at § 309

While the authorities cited hold that the corporation may purchase its own stock, the rule is subject to many restrictions, "one of which is that it shall not be done in such manner as to take away the security upon which the creditors of the corporation have a right to rely for the payment of their claims." It is further said, in one of the authorities cited: "In Illinois, the State where the right of the corporation to make such purchases is most clearly and decisively established, the collateral principle that such purchases are to be declared illegal and voidable at the instance of corpo-

rate creditors who are injured thereby, is distinctly stated and rigidly applied." Section 312; *Frazer* v. *Ritchie*, 8 Brader (Ill.), 554. It is held by the cases cited that, conceding that, for legitimate purposes, the corporation can buy in its stock, we think no lien is created thereby upon its assets for the payment of the purchase-money, and none of the cases cited are in conflict with the well settled principle that the corporation cannot buy in, or deal with its stock to the prejudice of creditors.

Counsel for the appellant further insists that, as shown by the affidavit of Mr. Hays, after the decision in *Mills* v. *Building and Loan Association*, the corporation adopted "a just and liberal method of settlement of its affairs," and "this is not an action to recover the price of stock subscribed for, but a contest between two creditors, the one attempting to enforce the payment of a just debt, the other to collect a penalty, which equity abhors, and which was recoverable by somebody else, if at all," and the assets sought to be recovered were the property of the appellant before the plaintiff recovered his judgment.

Whatever may have been the original merits of the plaintiff's claim, after he had obtained judgment he became a judgment creditor, with all the rights, as against the defendant corporation and its shareholders, that any other judgment creditor might have, and the appellant is seeking to recover the value of stock subscribed, and for which, as appears from the record, there had never been payment in full, and which, as we have seen, was liable to the demands of creditors. As to creditors, the liability of shareholders, to the extent of their stock, begins with the subscription, and can only end with a *bona fide* sale and transfer, or the winding up and settlement of the affairs of the corporation.

However fair and just may have been the measures adopted by the defendant corporation "for closing its business and making settlement with its members," it appears from

the report of the referee that, on the 21st day of June, 1873, Heggie executed a mortgage to secure advances; that, on that day, he received $622.21, and on July 19th, 1873, he received $138.69; that payments were made thereon from time to time, till May 1st, 1874, when the payments made exceeded the amount borrowed, with interest thereon, to the amount of $77.55, and thereafter the defendant corporation foreclosed the mortgage executed June 21st, 1873, by sale, and received the amount of $1,086 from the sale, and it is for the amount of the excess, with interest, that the plaintiff obtained judgment, and not a "penalty," but the "fines, penalties and forfeitures," so severely denounced in the case of *Mills* v. *Salisbury Building and Loan Association,* constituted the claim and defence of the defendant corporation.

Lastly, counsel say "appellant can never compel contributions from other stockholders opposed to the corporation, if she only is required to pay plaintiff's claim." This is a misapprehension. The appellant is not required to pay plaintiff's claim, but the judgment is against the defendant corporation, and the plaintiff is only seeking to subject its assets, to which appellant has no rightful claim till its liabilities are discharged. If the corporation and its stockholders, who should deal justly and fairly with her, shall fail to do so, it may be her misfortune, but that cannot affect the legal rights of a judgment creditor of the corporation.

No error.