## HARRY M. GILMORE v. W. M. SMATHERS.

(Filed 23 December, 1914.)

1. **Courts—Findings of Fact—Consent—Evidence—Appeal and Error.**

   Findings of fact by a court, under an agreement of the parties, supported by competent evidence, or evidence to the admission of which no objection has been duly made, are conclusive on appeal.

2. **Corporations—Subscriptions to Stock—Principal and Agent.**

   Subscriptions to the shares of stock in a prospective corporation may be made by an individual through his duly authorized agent, and also by a partnership in like manner, and the same agent, when duly empowered, may act for any number or all of the subscribers.

3. **Corporations—Capital Stock—Trusts and Trustees—Subscribers to Stock.**

   The capital stock of a corporation is a trust fund for the benefit of the creditor of the corporation and its stockholders, and its directors or other governing officers cannot release an original subscriber to its capital stock, or make any arrangement with him by which the company, its creditors, or the State shall lose any of the rightful benefits of his subscription.

4. **Corporation—Authorized Capital—Subscribers to Stock—Parol Evidence—Corporate Action—Stockholders' Liability.**

   Where a corporation commences business with a capital stock authorized by its charter which has been paid in cash by its subscribers, according to their subscriptions thereto, and thereafter becomes bankrupt, there can be no further liability upon its stockholders by reason of the fact that the charter authorized a larger capitalization, when there has been no corporate action taken in conformity with the charter or general law to increase the capital stock beyond that with which the business had been started; and the liability of the stockholders, therefore, depending solely upon whether they have paid in accordance with their subscription, the principles relating to varying a written contract by parol does not apply. Although the stock was issued to two sets of subscribers, it was all embraced by the original subscription to the authorized capital.

5. **Corporations—Subscribers' Liability—Tender—Interest—Court Costs.**

   In this action against certain stockholders of a bankrupt corporation, brought by its trustees, to recover the balance alleged to be due upon their original subscription to the stock, it appearing that they were obligated to only a certain sum, which they tendered and plaintiffs refused to

accept, it is held that a judgment of the trial court was proper that they pay the amount ascertained without interest or court cost from the date of the tender.

APPEAL by plaintiff from *Carter, J.,* at May Term, 1914, of HAYWOOD.

These are three actions brought by the plaintiff, as trustee in bankruptcy of the Canton Coöperative Company, against W. M. Smathers, M. V. Moore, and George J. Williamson, severally and respectively, to recover the amount of the subscription made by each of them to the said company. It was agreed that they should be heard together, and "any necessary and pertinent facts which are not expressed in the stipulation between the parties shall be found by the court without a jury." The stipulation mentioned above is as follows: "It is admitted that at the time of the adjudication in bankruptcy the Canton Coöperative Company owed the sum of $8,045.39, and that the entire assets of the said company were sold by the trustee in bankruptcy on 10 February, 1912, for the sum of $5,387.13; that M. V. Moore & Co. paid the said Canton Coöperative Company the sum of $5,100 for 510 shares of the capital stock of said company, said payment being made in cash." The case came on to be heard before his Honor, Judge Frank Carter, and much testimony was taken, whereupon the judge found the following facts and entered judgment thereon:

"The above three causes coming on to be heard by the court, the same having been consolidated by consent of parties hereto and tried together, and the parties hereto having agreed on certain facts as set forth in an agreement of writing filed herein, and having agreed that the court should find the additional facts raised by the pleadings from the testimony offered by the plaintiff and the defendants; and the plaintiff having offered in evidence certain documentary testimony, and both plaintiff and defendants having introduced and examined certain witnesses in their behalf, and after due consideration thereof, the court finds the facts as follows:

"1. That the plaintiff is the duly qualified and acting trustee of the Canton Coöperative Company, a North Carolina corporation, which became bankrupt and was so adjudicated on or about 5 December, 1911, upon the petition of certain of its creditors, and the debts of said corporation exceed its assets by $2,658.17.

"2. That the only parties named as incorporators and subscribers to the capital stock of the Canton Coöperative Company in its certificate of incorporation were M. V. Moore, who is named therein as a subscriber for 510 shares of the par value of $10 each, and that he signed said articles of incorporation for that number of shares; W. M. Smathers, who is named therein as a subscriber for 250 shares of the par value of

$10 each, and that he signed said articles of incorporation for that number of shares; and George J. Williamson, who is named therein as a subscriber for 240 shares of the par value of $10 each, and that he signed said articles of incorporation for that number of shares.

"3. That the certificate of incorporation or letters patent of the Canton Coöperative Company bear date April, 1910.

"4. That in appearing as subscribers as above named, said Moore, Smathers, and Williamson were representing, as a matter of convenience, M. V. Moore & Co., a partnership of Asheville, who had agreed to take 51 per cent of the capital stock of said corporation, and were also representing Clark, Daley, Champion Fiber Company, and others at Canton, who had agreed to take 49 per cent of said stock, the agreements aforesaid having been entered into prior to said subscriptions. Said agreement was not, however, incorporated nor referred to in any of the minutes, records, or proceedings of said corporation, nor any notice thereof given to any creditor. That no record transfer of said subscriptions or their interest therein was ever made by said M. V. Moore, W. M. Smathers, and George J. Williamson.

"5. That the amount of stock to be subscribed before said corporation could begin business was $10,000, and the amount named as its authorized capital stock was $25,000; that M. V. Moore & Co. paid into the treasury of Canton Coöperative Company the sum of $5,100 in cash on account of the subscription of Moore, Smathers, and Williamson above mentioned, and the Canton parties above mentioned caused and procured parties at Canton to pay into the treasury of said corporation the sum of $4,700, all the aforesaid payments being made in pursuance of the agreements set out in the fourth finding above.

"6. That neither the board of directors nor stockholders of said Canton Coöperative Company ever attempted to issue stock on any other account or in excess of $10,000.

"7. That all the money called for in the subscriptions above mentioned have been paid in cash into the treasury of Canton Coöperative Company, except the sum of $200.

"8. That Moore, Williamson, and Smathers, and M. V. Moore & Co. offered in writing to submit to judgment on 6 May for the sum of $200, with interest and costs, as shown in said tender, but plaintiff declined said offer.

"Upon the foregoing findings of fact the court concludes as a matter of law that the defendants William M. Smathers, M. V. Moore, and George J. Williamson are only liable to the plaintiffs for the unpaid subscription of $200 of the $10,000 subscribed, together with interest on the sum of $200 from 20 April, 1910, and the cost of this action up to 6 May, 1914; and it is therefore considered, adjudged, ordered, and

decreed by the court that the plaintiff, Harry M. Gilmore, trustee, have and recover judgment against the defendants William M. Smathers, M. V. Moore, and George J. Williamson for the sum of $200, with interest thereon from 20 April, 1910, together with the cost of this action up to and including 6 May, 1914, and that the plaintiff pay the cost of this action accrued since 6 May, 1914, to be taxed by the clerk."

Plaintiff having duly excepted to the findings and judgment, brought this case here by appeal.

*Merrimon, Adams & Adams for plaintiff.*

*Bourne, Parker & Morrison, Smathers & Ward, and Morgan & Ward for defendants.*

WALKER, J., after stating the case: It may be said, *imprimis,* that we are concluded by the findings of the judge as to the facts, and can only review his conclusions of law therefrom, there being evidence to support the findings of fact, and no incompetent evidence, duly objected to, having been heard. *Branton v. O'Briant,* 93 N. C., 99; *Shoaf v. Frost,* 127 N. C., 306; *Travers v. Deaton,* 107 N. C., 500; *Matthews v. Fry,* 143 N. C., 384.

It seems to us that the findings of fact are a complete answer to the plaintiff's contentions. The proposition cannot be gainsaid that M. V. Moore & Co. had the right to subscribe for 51 shares of the capital stock through M. V. Moore, W. M. Smathers, and George J. Williamson, if the latter were authorized to make the subscription for that copartnership, for what a man can do by himself he may generally do through an agent, if so minded; and what he does through another, as his agent, is just as binding as if he had performed the act in person. And so it follows that Joseph Clark, M. R. Daley, M. A. Dudley, the Champion Fiber Company, and others could subscribe for the stock of the company through the same parties. "A contract of subscription, like any other contract, may be made by one person as agent for another, if he has authority, and the subscription being accepted, and the shares being apportioned to the agent for the principal, or to the principal, the latter becomes a stockholder as fully as if he had subscribed for himself." Clark on Corporations, p. 292. When the subscriptions were thus validly made, certificates issued and the stock paid for, these stockholders were discharged from any further liability to the company and its creditors on their subscriptions, because they had done all that they had contracted to do. If a person has subscribed for stock, he is liable to the corporation and its creditors upon his subscription, and he cannot be relieved of this liability until he has paid for the stock taken by him.

The following principles were declared in *Foundry Co. v. Killian,* 99 N. C., 501:

1. The capital stock, including unpaid subscriptions therefor, of a corporation constitutes a trust fund for the benefit of creditors of the corporation, and the creditors have a right to examine into the affairs of the corporation, to ascertain if the subscriptions of stock have been paid, and how.

2. Each subscriber for stock in a corporation thereby becomes liable for the amount of stock subscribed by him, and he can only be discharged by paying money or money's worth in the manner provided by the charter and by-laws.

3. A subscriber cannot discharge his liability as against creditors for his subscription by substituting shares paid up by another subscriber.

4. Parol evidence will not be received to vary the terms of subscription or to show a discharge from liability on the part of a stockholder, in any other way than that prescribed by the charter and by-laws.

That decision was largely based upon the principles announced, or rather reiterated, in *Sawyer v. Hoag,* 17 Wall. (U. S.), p. 620, by *Mr. Justice Miller;* in *Burke v. Smith,* 16 Wall., 390, and *New Albany v. Burke,* 11 Wall., 96, where it was substantially said that though it be a doctrine of modern date, it is now well established that the capital stock of a corporation, especially its unpaid subscriptions, is a trust fund to be secured and administered for the benefit of the general creditors of the corporation, subject, of course, to the claims of lienors entitled to priority.

If we consider the rapid development of corporations as instrumentalities of the commercial and business world in the last few years, with the corresponding necessity of adapting legal principles to the new and varying exigencies of this business, it is no solid objection to such a principle that it is modern, for the occasion for it could not sooner have arisen. The governing officers of a corporation cannot, by agreement or other transaction with the stockholders, release the latter from their obligation to pay, to the prejudice of creditors, except by fair and honest dealing and for a valuable consideration. Such conduct is characterized as a fraud upon the public, who were expected to deal with them. This equitable principle has been as firmly rooted in our jurisprudence as any we now recall, and with good reason, as it is eminently fair and just. *Heggie v. B. and L. Assn.,* 107 N. C., 581; *Clayton v. Ore Knob Co.,* 109 N. C., 389; *Bain v. B. and L. Assn.,* 112 N. C., 253; *Hill v. Lumber Co.,* 113 N. C., 176; *Cotton Mills v. Burns,* 114 N. C., 355; *Bank v. Cotton Mills,* 115 N. C., 513; *Cooper v. Security Co.,* 122 N. C., 464; *Smathers v. Bank,* 135 N. C., 413, and *McIver v. Hardware Co.,* 144 N. C., 484, where the subject was exhaustively examined by us and the doctrine applied to dealings between two corporations, whereby the one sold, or pretended to sell, its entire assets to the other, upon a consideration

beneficial to the directors and stockholders of the selling company and to the prejudice of its creditors. We declared the dicker void in law because, on its face, it manifestly contravened this time-honored principle, that the creditor must engross the first thoughts of the corporate authorities and be cared for before they can look after their own interests. Self-interest having no place in such a transaction, the creditors' rights must not be sacrificed or impaired for their personal benefit. In *Clayton's case, supra,* it was said that the stock, in order to exempt its holder from the claims of creditors, must be paid for in money or its equivalent in property at a fair and honest valuation, and in *Higgins v. B. and L. Assn., supra,* the Court held it to be well settled, at least in this country, that the capital stock of a corporation is a trust fund, to be preserved for the benefit of corporate creditors, and no agreement or arrangement between a corporation and its stockholders, whereby the latter are to be released from indebtedness on their subscriptions, will be valid or of any force as against creditors, citing Waterman on Corporations, 126 *et seq.;* Cook on Stock and Stockholders, sec. 42; *Foundry Co. v. Killian, supra.* The stock subscribed is the capital of the company, its means for performing its duty to the Commonwealth, and to those who deal with it. Accordingly, it has been settled by very numerous decisions that the directors or trustees or other governing officers of a company are incompetent to release an original subscriber to its capital stock, or to make any arrangement with him by which the company, its creditors, or the State shall lose any of the benefit of his subscription. Every such arrangement is regarded in equity, not merely as *ultra vires,* but as fraud upon the other stockholders, upon the public, and upon the creditors of the company. *Burge v. Smith,* 16 Wall. (U. S.), 390; *Upton v. Tribilcock,* 91 U. S., 45; *Poots v. Wallace,* 146 U. S., 689; *Hernold v. Upton,* 154 U. S., 624; *Sawyer v. Hoag, supra.* The capital paid in, and promised to be paid in, is a fund which the trustees cannot squander or give away. They are bound to call in what is unpaid, and carefully to husband it when received, for the benefit of shareholders and creditors. *Upton v. Tribilcock, supra; Sawyer v. Hoag, supra.* This fund is a substitute for the personal liability which subsists in private copartnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. *Sanger v. Upton,* 91 U. S., 56; *Clark v. Bever,* 139 U. S., 96. Transactions between stockholders and the corporation must be closely scrutinized in the interest of creditors, lest they contravene these principles. Corporate stock is supposed to represent so much money or money's worth received by the corporation therefor, and the creditors of the corporation have the right to insist that this representation be made good, so far as necessary to pay

their legal claims against the corporation. *Richardson v. Greer,* 133
U. S., 30; *Scovill v. Thayer,* 105 U. S., 143; *Handley v. Stutz,* 139 U. S.,
417. All the cases agree that creditors of a corporation may compel pay-
ment of the stock subscribed, so far as it is necessary for the satisfaction
of the debts due by the company. *Hawkins v. Glenn,* 131 U. S., 319.
The number of shares and the amount of capital cannot be increased,
except in the manner expressly authorized by the charter or articles of
association. *Railway Co. v. Allerton,* 18 Wall., 233; *Spring Co. v.
Knowlton,* 103 U. S., 49. The amount authorized cannot be increased
without proper legal authority. If there be losses which impair it, there
can be no formal reduction without the like sanction. No power to
increase or diminish it belongs inherently to the corporation. *Farring-
ton v. Tennessee,* 95 U. S., 679. Even in such case, however, prudent
and fair directors would prefer to have the sanction of the stockholders
to their acts. *Railway Co. v. Allerton, supra.*

But while we fully recognize the doctrine as thus established, and now
relied on by the plaintiff, we do not perceive its application to the find-
ings of fact in this case, for here there was no unpaid subscription. The
transaction was a simple one, as described by the court in its findings.
The authorized capital was $25,000, and by this charter of the company
it was forbidden to start in business until 1,000 shares of the par value
of $10,000 had been subscribed *and paid for.* This was done, as appears,
because Moore, Smathers, and Williamson subscribed for 510 shares as
agents of M. V. Moore & Co., and Joseph Clark, M. R. Daley, Cham-
pion Fiber Company, and others, of Canton, known as the Canton sub-
scribers, took the remainder of the subscription, or 490 shares of the par
value of $4,900, which, with the former amount taken by Moore & Co.,
completed the subscription which had been authorized to that date. And
all this stock was paid for in full. It is not, therefore, the case of cred-
itors against stockholders (who are seeking to be discharged from a sub-
scription, which has not been satisfied by payment, upon the ground of
a parol understanding or agreement that they should not be liable, or by
reason of some negotiation between them and the corporate authorities,
not known to the creditors at the time the corporate debts were con-
tracted, and expressly or impliedly assented to by them), whereby the
stockholders were to be released. There is no attempt to change the
form of the subscription or to vary the contract with the company by
parol evidence, or to show that what appears did not in fact exist, but
merely to show that the subscription really made and admitted had been
paid for in the manner we have indicated. There can be no question of
good faith or honest dealing involved, for the stock was not paid for in
property or money's worth, the real value of which may be in dispute,
but in money itself. The creditors have everything they can ask for,

reasonably or unreasonably; and they are, therefore, seeking, unconsciously of course, to recover something to which they are not in law or in equity justly entitled.

There is one other consideration which requires some slight attention. The company, by its duly constituted authorities, has never authorized the issue of more stock than 1,000 shares of the total value of $10,000, $10 being the par value of each share. It was not bound to issue stock to the full limit of its authorized capital, but was left free to increase it from time to time as its necessities and the exigencies of business might suggest as wise and expedient to place and maintain its affairs upon a successful and prosperous basis. "Corporations are usually given authority to begin business when a certain sum has been subscribed to the capital stock, with power to increase the amount to a definite limit. In such cases, being a fundamental change, the directors cannot make such an increase; it must be done by the stockholders." Womack's Law of Corporations, par. 186, p. 99. The number of shares and the amount of capital cannot be increased, except in the manner expressly authorized by the charter or articles of association. *Railway Co. v. Allerton,* 18 Wall., 233, 235; *Spring Co. v. Knowlton,* 103 U. S., 49, 57.

As we have seen, the amount authorized cannot be increased without proper legal authority. If there be losses which impair it, there can be no formal diminution of it, so that the capital stock and the assets do not correspond or the amount of stock is in excess of their real value, without the like sanction. No power to increase or diminish it belongs inherently to the corporation, but any material change in it must be accomplished by proper corporate action in conformity with the charter or the general law.

The plaintiff has proceeded upon the theory that the 490 shares subscribed for by the Canton people through Moore, Smathers, and Williamson were additional to those taken by the same parties apparently for themselves, but really for M. V. Moore & Co. and the Canton subscribers; but this has been shown to be a mistake, there having been only one subscription of 1,000 shares for all, the certificates issued to Clark, Daley, Champion Fiber Company, and others of Canton representing the subscription for the 4,900 shares taken for them by their agents, M. V. Moore and the others above named. This transaction, therefore, was a lawful one. *Burke v. Smith,* 16 Wall. (U. S.), 390.

The case needs no further elaboration. It depends more upon a clear understanding of the facts, which have been so well stated by *Judge Carter,* than upon the application of any special principle of law, which is not perfectly familiar to all of us. Defendants admit their liability for the 20 shares not paid for, or $200.

We have found no error in the case, and therefore affirm the judgment.
Affirmed.